## DANIEL H. BOND'S APPEAL FROM PROBATE.

It is a well settled rule of construction in respect to wills, that a court may inquire into every material fact relating to the persons claiming under the will, the property claimed to be given, and the circumstances of the testator and his family, for the purpose of enabling the court to identify the persons or property intended. testator left a will containing the following devise :—" I give to my wife all my

real estate so long as she shall remain my widow, but on her decease or marriage the remainder thereof I give to my children and their heirs respectively, to be divided in equal shares between them." At the date of the will and at his death the testator had four children living, and four others had previously died, all leaving children. No reason appeared for supposing that the testator had any preference for his surviving children over these grandchildren. Held, that the testator must be understood to have intended these grandchildren by the word " heirs," and that the real estate was to be distributed in equal shares among the surviving children and the representatives of the deceased ones.

Appeal from a decree of the probate court of the district of Canterbury, ordering a distribution of the real estate of George S. White, deceased.

George S. White died in 1852, leaving a will dated January 9th, 1852, which contained the following devise :—" Secondly, I give and devise to my beloved wife Mary White, all my real estate, as long as she shall remain my widow ; but on her decease or marriage, the remainder thereof I give and devise to my children and their heirs respectively, to be divided in equal shares between them." At the time of the execution of the will, and at the time of his death, the testator had four children living ; and four children who. had deceased before the making of the will had left children, who were living at the time of the execution of the will and at the time of the death of the testator. Some of the grandchildren had neither father nor mother living and were entirely destitute of the means of support. Two of his living children were unmarried, and but one had children. The testator was on equally good terms with the children and grandchildren. He came to this country from England in 1812, and prior to that time had lost a child, who died when quite young.

The court of probate ordered a division of the real estate into eight parts, and its distribution among the children living and the representatives of the four children who had died leaving issue. From this decree the appeal was taken.

The case was reserved by the superior court, on the above facts, for the advice of this court.

*D. W. Bond*, for the appellant.

1. At common law only those children who were living at

the death of the testator are entitled to take under this devise. The will being a devise to a class of persons, speaks at the death of the testator, and includes all such as answer the description at that time. Jarman on Wills, 296; *Campbell* v. *Rawdon*, 18 N. York, 412; *Bullock* v. *Downes*, 24 Am. Law Reporter, 706. The word "children," in its primary sense, designates the immediate offspring only; (*Hallowell* v. *Phipps*, 2 Whart., 380; 2 Jarman on Wills, 51; *Yeates* v. *Gill*, 9 B. Monr., 203; *Jackson* v. *Staats*, 11 Johns., 348;) and a testator is always presumed to use the words in which he expresses himself according to their strict and primary sense, unless. from the context of the will, it appears that he used them differently, even though it may be supposed from the testator's circumstances that he intended otherwise. Wigram on Wills, Rules I. and II.; 1 Jarman on Wills, 351, 2; *Comstock* v. *Hadlyme Eccl. So.*, 8 Conn., 254. There is nothing in this will which indicates that the testator intended to use the word "children" in any other than its primary sense. The phrase, "and their heirs," can not be held to indicate any such intent, it being a technical phrase, used to designate the quantity of the estate devised, and must be so construed by the court in the absence of any words showing that it was not used in its technical sense. The word "their" can have no other antecedent than "children," and as this means only children living at the death of the testator it can only be their "heirs" who are here referred to. And this phrase is not affected by the use of the word "respectively," for this has been construed as creating a tenancy in common where otherwise would have been an estate in joint tenancy; (*Davenport* v. *Oldis*, 1 Atk., 580; *Heathe* v. *Heathe*, 2 id., 122; *Clarke* v. *Samson*, 1 Ves. Sr., 101; 3 Greenl. Cruise, 412; *Torret* v. *Frampton*, Style, 434;) which brings the word within the rule as laid down by Cruise:—"When once a court of justice has determined the meaning of certain words or forms of expression, the same effect will always be given to them." 3 Greenl's Cruise, 178. It simply shows that *each* is to take, but does not designate another class of devisees. If the names of the persons described by the word "children"

were to be substituted in its place, so that the clause would read " to Thomas, Andrew, Elizabeth and John White, and their heirs respectively," no one would claim that the word " respectively " changed the construction of the preceding words.

2. The case does not come within the statute of this state, tit. 14, chap. 1, sec. 5. This statute contemplates that class of cases where a testator, in making his will, fails to provide by a clause of substitution for the death of the object of his bounty in his life time, either from thoughtlessness, or ignorance of the rule of law that the devise will fail in such a case. The words of the statute are : " If a devisee or legatee shall die in the life time of the testator, and no provision shall be made for such contingency," &c. If the child were already dead it could not be said to be a devisee " or " legatee," as a devise to a deceased person is void. 1 Jarman on Wills, 302 ; 2 Washb. on Real Property, 691. Neither could there be any " contingency." A contingency is something that may or may not happen, a possibility. There could be no possibility, if the child were already dead, of its outliving the parent. It is pure carelessness for the testator not to provide for the children of deceased children, if he so intends, when all the facts are known to him at the time the will is made ; and if he supposes he has provided for such a case, and is mistaken in the meaning of the words he uses, it is too late now to remedy the mistake. The statute obviated the necessity of a clause of substitution, or provision for the death of the devisee in the testator's life time, but such a clause would not admit the children of a child deceased at the time the will was made. 2 Jarman on Wills, 481 ; *Christopherson* v. *Naylor*, 1 Merivale, 320 ; *Butler* v. *Ommany*, 4 Russ., 70 ; *Waugh* v. *Waugh*, 2 Myl. & Keene, 41 ; *Peel* v. *Catlow*, 9 Simons, 372 ; *Gray* v. *Garman*, 7 Jurist, 275 ; *Hallowell* v. *Phipps*, 2 Whart., 376.

3. If the term " heirs " is to be construed as applying to the children of the deceased children, then these children would be entitled to take equally with the living children, *per capita*, there being no provision that they should take by representation, and

it being expressly provided that the property should be " divided in equal shares " among the devisees; that is, the property is to be divided into as many equal shares as there are children and grandchildren. This would be unjust to the living children, and can not have been intended, yet it is a necessary result of the construction claimed by the appellees.

*Halsey*, for the appellees.

1. By the use of the words " estate," in the devise to the wife, and the " remainder thereof," in the subsequent devise to the children, a fee would pass to the children without any words of inheritance. 1 Swift Dig., 139, 140 ; *Hungerford* v. *Anderson*, 4 Day, 3C8 ; 4 Kent Com., 9th ed., 633. The word " heirs " is not then necessary to pass a fee to the ultimate devisees. No doubt a devise to *A* and his heirs means an estate to *A* in fee, and without help from the context " heirs " must be taken as a word of limitation. But a devise to the " heirs of *A* " makes the heirs the first takers, and the heirs will take as purchasers. *Gold* v. *Judson*, 21 Conn., 616 ; Ram on Wills, 53, 109.

2. The question is whether the testator intended to include the heirs of his deceased children in the gift, and whether that intention can be deduced from the terms of the instrument, in connection with the state of circumstances to which the testator intended to apply it. Here we have the fact that, at the time of making the will, the deceased had four children living, and four dead leaving children. Supposing, therefore, that there was no ground for discrimination or exclusion, which is admitted in this case, and that the testator desired to provide for the heirs of his deceased children, what could be more natural with an unprofessional person than to couch the devise in these same words, " to my children and their heirs respectively." Does this mean any thing else than " to my children living, and the heirs of those deceased, respectively ? "

3. The word " respectively " has great significance in this connection. It is a word of *separation* and *division*. It was not needed here to denote a tenancy in common in equal

shares, for that is effected by the words "to be divided in equal shares between them." It is a well established rule of construction that effect must be given to every word. Ram on Wills, 98. To give it any force beyond mere tautology in this instance requires a division between the surviving children and the heirs of deceased children. The division in equal shares is subsequently provided for, the fair construction being a division according to stocks; so that if "respectively" shall have any operation, it must intend a division between children, and the heirs of children. If the division intended had been between the children, the devise would have been, "to my children respectively, and their heirs." But the word "respectively" qualifies the whole preceding phrase—"my children and their heirs respectively." It can not mean a division between the living children and their own heirs. The only rational construction is, a division between children living and the heirs of those deceased.

4. It is now well settled that parol proof of intention is applicable to the interpretation of a will to this extent, that every fact and circumstance in respect to the situation of the testator and the circumstances of the claimants upon his bounty, which may lead to a correct application of the provisions of the will, is competent evidence. 1 Greenl. Ev., § 288; 2 Jarman on Wills, 742; Wigram on Wills, §§ 96, 215; *Spencer* v. *Higgins*, 22 Conn., 521; *Goodhue* v. *Clark*, 37 N. Hamp., 525; *Williams* v. *Bradley*, 3 Allen, 279; *Hiscocks* v. *Hiscocks*, 5 Mees. & Wels., 363. In this case the admitted facts show that there were no existing circumstances to induce the testator to make a discrimination between his children living and the heirs of his deceased children.

5. If the construction of the will is a matter of doubt, the duty of the court, upon the facts admitted, is to incline to that construction which favors equality of distribution, as such would be the probable intention of the testator. In this case "equality is equity." It is a settled rule that it requires a plain intention to disinherit an heir. *Doe* v. *Wilkinson*, 2 T. R., 209; *Doe* v. *Dring*, 2 Maule & Selw., 448; 2 Jarman on Wills, 742.

6. But the doctrine for which the appellant contends can have no application in this case, assuming, as he claims, that the devise is simply to " children " as a class, and that " heirs " as here used is a word of limitation. By the statutes of this state, tit. 14, chap. 1, § 5, provision is made against a lapse in the case of a devise to a child or grandchild when no provision is made for the contingency of the death of such devisee before the testator. Of course by this statute the rule is broken that only those who answer the description at the death of the testator can take under the devise. But under a devise to children is there any distinction to be made between the " issue " of those children who die before the making of the will and those who die afterwards? Equity requires that there should be none, and it would seem that such is the fair construction of the statute. If in this case one of the children living at the time of making the will had died before the testator, his or her " issue " would have taken his or her share, instead of the whole estate going to the survivors as a class. Ought not the same rule to apply to the " issue " of all the children of the testator? This view seems to have been taken of a similar statute, in *Minter's appeal*, 40 Penn. S. R., 111. Is not the word " children " in such case equivalent to " issue ? "

HINMAN, C. J. Taking into consideration the condition of the testator's family at the time he made his will, and which remained the same up to the time of his decease, and with this aid interpreting the language of the will, we have no doubt that he intended to make the same provision for the representatives of his deceased children as for those who survived him. The only question in the case is, whether he has expressed this intention so that we can give effect to it consistently with the rules of law. Now the main object of the testator was undoubtedly to make a suitable provision for his widow. This he could only accomplish by a will, because he gave to her a much larger share of his property than she would have taken under the statute of distributions. Having done this, it was natural that he should proceed to dispose

of the remainder of his estate by will, although he intended the same disposition of it which the law would have made in the absence of a will.

Making his will, therefore, for the purpose of providing for his wife, and intending to give her the use of his whole real estate, and only disposing of the remainder because it would otherwise leave a portion of his property to be settled as intestate estate, it is not to be expected that very much thought or care would be bestowed upon the precise language in which this remainder was disposed of. Hence he simply says at the close of the devise to his wife, " The remainder thereof I give and devise to my children, and their heirs, respectively, to be divided in equal shares between them." It is a well settled rule of construction in respect to wills, that a court may place itself in the condition of the testator in respect to his property, and the situation of his family; or, as expressed by Wigram in his fifth proposition with regard to the construction of wills, " for the purpose of determining the objects of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family, and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator."

In the application of this proposition to the facts of the case, we find the testator, at the time his will was made, and at his death, had four children living, and he also had had four other children who had deceased, each leaving children, who of course came within the description of heirs of children of the testator. What then did he mean by the words " and their heirs," as used in the residuary clause of this will ? Were they used as mere words of limitation, for the purpose of indicating that his four living children were to take the fee in the residue of his property, or were they used to designate a class of persons standing in the relation of grandchildren, whose claims upon him, in consequence of their parents' death, were

equally strong with those of his surviving children ?   We pay no attention to the evidence going to show that his affection was as great for these grandchildren as for his surviving children, and that some of them seemed to have even greater claims upon him.   Perhaps this evidence was inadmissible.   It is, we think, unnecessary to determine that question, as it seems to us to be enough that there appears to be no reason to suppose that he had any preference for his surviving children over his grandchildren.   That these were not words of limitation merely, is apparent from the circumstance that they were wholly unnecessary for that purpose, since the words "estate," and "the remainder thereof," were ample to pass the fee ; still, had they stood alone, without any thing added to them, the grammatical construction might have compelled us to consider them as used for this purpose, whatever we might think to have been the real intention of the testator.   But he adds the word "respectively," which, as a word of division or separation, shows that he had in his mind some separation or distinction other than between the four surviving children, for he goes on and superadds, "to be divided in equal shares between them," which renders the word "respectively" entirely nugatory and useless, if the appellant's construction is the true one.   To give the word any force or meaning, therefore, it is necessary to suppose that he intended a separation between his children and the heirs of children, and that by the words "and their heirs" he referred to the heirs of other children than the four surviving children, and that it was between these two classes of persons, both of whom he intended should take portions of this residue of his estate, that he intended to distinguish by the use of the word "respectively."

If the appellant's construction of the will is the correct one it is apparent that it would not alter its meaning in the slightest degree to drop the words "and their heirs."   It would then read, "the remainder thereof I give to my children, respectively, to be equally divided between them," from which it is apparent that the word "respectively" has no meaning whatever, and is not merely inoperative but seems quite out

of place; whereas, if we supply what was, as we think, understood, and therefore intended, it would read, "the remainder thereof I give to my children and to the heirs of my children respectively, to be equally divided," &c.; in which case no one, we presume, would claim that the meaning was not such as it was held to be by the court of probate.

And this leads us to remark, in respect to a point suggested but not very much pressed, that if the construction was not such as the appellant claims, the words "and their heirs" would include the heirs of the child who died in England leaving no children, and for this cause the decree of probate should be reversed. We have no doubt that by the use of the word "heirs," in this will, the testator meant to designate the children of those of his children who were dead, and had no reference to the general heirs of his infant child whose death was previous to the testator's coming to this country. Nothing is more common among unprofessional persons than the use of the word heirs as synonymous with children; and it is only the circumstance that he used it to designate the persons who, being in fact children of persons that had deceased, were in fact also the heirs of those persons, and consequently correctly designated as such, that seems to render that use of the word in this case technically correct. But this is an accidental circumstance, which ought not to alter the construction of the will.

We are therefore of opinion that the superior court should be advised to affirm the decree of probate appealed from.

In this opinion BUTLER and DUTTON, Js., concurred; SANFORD, J., dissented.