Raymond *v.* Hillhouse.

——•◆•——

ALBERT C. RAYMOND AND ANOTHER, EXECUTORS, *vs.* SARAH B. HILLHOUSE AND OTHERS.

A testator made the following bequest:—"The residue of my estate I give to the following named persons, to be divided equally among them; my sisters *R* and *S*, the grandchildren of my deceased brother *W*, and the grandchildren of my deceased sisters *D* and *M;* meaning by this to include all the grandchildren living at the time of my decease." Held that the grandchildren took *per stirpes* and not *per capita.*

PETITION IN EQUITY by the executors of the will of Samuel

Hillhouse, deceased, for advice as to the construction of the will; brought to the Superior Court in Hartford County.

The clause in the will as to which the question arose, was as follows:

"*Eighth:* All the residue of my estate, real and personal, I give and devise to the following named persons, to be divided equally among them; my sisters Rachel and Sarah, the grandchildren of my brother William, and the grandchildren of my deceased sisters Delia and Mary; meaning by this to include all said grandchildren living at the time of my decease; provided that the share of Elizabeth Raymond, daughter of my deceased nephew James H. Raymond, shall be held by John Beach, of Goshen, in trust for her benefit as hereinafter provided."

There were living at the testator's decease two grandchildren of the testator's brother William, three of his sister Delia, and fourteen of his sister Mary; and the question submitted to the court was, whether these grandchildren took under the will *per stirpes* or all the legatees took *per capita.*

The case was reserved for the advice of this court.

*C. E. Gross,* for the petitioners.

*H. C. Robinson,* for the claimants *per capita.*

1. A gift to "children," or to "grandchildren," or to any class described by its members' relation to the testator, is a gift to them individually. This is especially true when the technical words "to be equally divided among them" are employed. And still more strongly so when there is any limitation of survivorship, as "to the survivors" of them, or to "such as survive," or to the "living" children or grandchildren. These propositions will hardly be disputed. They are recognized in all the text-books and in the reports. 2 Jarman on Wills, 111. In England—in *Cunningham* v. *Murray,* 1 De G. & Sm., 366; *Rickabe* v. *Garwood,* 8 Beav., 579; *Lenden* v. *Blackmore,* 10 Sim., 626; *Dowding* v. *Smith,* 3 Beav., 543; *Lincoln* v. *Pelham,* 10 Ves., 166, 176; *Blackler* v. *Webb,* 2 P. Wms., 383, which has been quoted approvingly

everywhere as a leading case. In Ireland—in *Heron* v. *Stokes*, 3 Dru. & War., 89. Indeed, there is no controversy upon this principle on the other side of the ocean, and authorities to support it can be multiplied indefinitely. We have the same judicial results in this country. In Massachusetts—*Weston* v. *Foster*, 7 Met., 297; *Balcom* v. *Haynes*, 14 Allen, 204; *Hill* v. *Bowers*, 120 Mass., 135. In New York—*Collins* v. *Hoxie*, 9 Paige, 81; *Murphy* v. *Harvey*, 4 Edw. Ch., 131; *Myres* v. *Myres*, 23 How. Pr. R., 410; *Seabury* v. *Brewer*, 53 Barb., 662. In Pennsylvania—*Bender's Appeal*, 3 Grant, 210; *Miller's Appeal*, 35 Penn. St., 323; *Fissell's Appeal*, 27 id., 55. In Connecticut—*Lord* v. *Moore*, 20 Conn., 126; *Gold* v. *Judson*, 21 id., 616; *Lyon* v. *Acker*, 33 id., 225.

2. But it will be claimed that this rule yields to evidence of another intention apparent in the will, even though that intention be faintly expressed. To this we reply, without controverting the principle, that there is no evidence at all in the phraseology of this document which intimates any contrary intention; on the other hand we claim that the phraseology is confirmatory of this construction. Nor can it be said that the legal principle which guards the interests of lineal descendants intervenes to obstruct the claim for which we contend. If, as is true, the law seeks to save lineal descendants from disinheritance, there are no moral or legal reasons to protect the distant collateral relatives of a bachelor testator from his exercising those preferences and partialities which such testators almost invariably feel. We do not deny that in Connecticut, as elsewhere, these rules of construction have been held subject to the commanding rule of interpreting the instrument according to the testator's intent, to be determined by all proper evidence from the instrument and its circumstances. In *Bond's Appeal from Probate*, 31 Conn., 184, the counsel for the appellees made no claim in behalf of his clients, the grandchildren, that they took *per capita*, and the court of course granted him no more than his request. The recent case of *Talcott* v. *Talcott*, 39 Conn., 186, was altogether peculiar. The principal ground upon which the decision rests, is that an individual division of the estate would have carried

five-ninths of it away from children to strangers. Emphasis was put by counsel for the family upon the use of the word "heirs," which our court in *Cook* v. *Catlin*, 25 Conn., 387, held to import in Connecticut, on account of our peculiar statutes, a distribution by classes, recognizing and affirming the early controlling case (1786) of *Kennedy* v. *Kennedy*, 1 Swift Dig., 115.

3. But the will expressly directs the distribution of the residue among the beneficiaries named *per capita* by its use of the word "persons." "To the following named *persons*, to be equally divided among them." The division is to be equal between the persons as if particularly named. There is perhaps no word in our language, except a numeral, which so completely individualizes as "person." It is even more individual than "individual" itself. For we speak of an individual city, but never use the word personal in that manner. The testator has thus expressed his individualization of these beneficiaries, and then ordered his estate to be divided equally among *them*. It would seem difficult to more surely describe the objects of his bounty as single persons, and their several equal portions in his will.

*J. Halsey*, for the claimants *per stirpes*.

The proposition contended for in this brief is, that by the eighth clause of the will the testator has named five devisees between whom the estate is to be equally divided, viz: two persons, his sisters Rachel and Sarah, and three classes of persons, the grandchildren of his brother William, and the grandchildren of his deceased sisters Delia and Mary, and that the estate should be divided into five equal portions, one of which should be distributed to the heirs of Rachel, one to the devisees of Sarah, one to the grandchildren of William, one to the grandchildren of Delia, and one to the grandchildren of Mary. In support of this proposition, we contend—

1. That the provisions of the will in question bring it entirely within the principles adopted by this court in the case of *Acker* v. *Lyon*, 33 Conn., 222, and the reasons given by CARPENTER, J., in that case are referred to and adopted in the

argument of this case. In that case the devise was to three daughters by name and the children of a brother, the children not being named, "share and share alike." Here the devise is to two sisters named, and the grandchildren of a brother and two sisters, the grandchildren not being named, "to be divided equally among them." The cases are parallel, except as to the degree of kindred, and the language employed to denote the portion given to each. The words "share and share alike," seem to point more decidedly to a distribution *per capita* than the words "equally among," or "equally between." *Lee* v. *Lee*, 39 Barb., 173.

2. The names and number of the grandchildren do not appear in the will; they are referred to only as a class, to be ascertained at a future time. The testator has expressly added what indeed the law would supply, but the addition indicates his intention, that the class shall include all living at the time of his decease. This indicates an intention to make the shares of the grandchildren of a brother or sister only equal to the share of one of his sisters.

3. There is nothing in the language of the will to indicate an intention to discriminate against his two sisters in favor of his great nephews and nieces, and the court will not presume any such intention. On the other hand the sisters seemed to be especially the objects of his bounty.

4. When the testator desired a *per capita* distribution between his nephews and nieces, children of different sisters, he distinctly and explicitly provided for such distribution. But when he makes a distribution between his two sisters and the several classes named, very different language is employed, indicating that he understood the legal effect of the language used.

5. The words "to be divided equally among them" do not affect the construction, since they may apply to a division among the classes as readily as to a division among the individuals. *Hasbrook* v. *Harrington*, 16 Gray, 102; *Balcom* v. *Haynes*, 14 Allen, 205; *Risk's Appeal*, 52 Penn. S. R., 269.

6. The testator had evidently in mind the idea of representation of a stock, though the term "heirs" is not used, for

the class embraces an uncertain body, only to be determined at his death.  *Bassett* v. *Granger*, 100 Mass., 349.

7.   It is to be inferred from the provisions of the will that the testator had neither wife nor child.  His next of kin were his two sisters and brother living, and the children and grandchildren of his deceased sisters.  The grandchildren would come within the rule of representation and take their deceased parents' share.  If there is any doubt in regard to the construction, the statute furnishes a safe guide in this case.  *Lyon* v. *Acker*, 33 Conn., 224; *Risk's Appeal*, 52 Penn. S. R., 271.  If either of the sisters named had left issue, the inequitable effect of a *per capita* distribution would be still more apparent.

Loomis, J.   The advice of this court is asked concerning the proper construction of the residuary clause of the will of Samuel Hillhouse, late of Wethersfield, deceased, which is as follows:—"All the residue of my estate, real and personal, I give and devise to the following named persons, to be divided equally among them:—my sisters Rachel and Sarah, the grandchildren of my deceased brother William, and the grandchildren of my deceased sisters Delia and Mary; meaning by this to include all said grandchildren living at the time of my decease; provided that the share of Elizabeth Raymond, daughter of my deceased nephew, James H. Raymond, shall be held by John Beach, of Goshen, in trust for her benefit as hereinbefore provided."   And the precise question is, whether the estate should be distributed among the beneficiaries *per stirpes*, or *per capita*.

To aid in the construction we invoke, first, the paramount rule that requires us to ascertain if possible the intention of the testator from the language of the will and all the circumstances.   But unfortunately the language here employed is considered so doubtful as to be made the basis of directly opposing arguments.

The counsel who contended for a distribution *per capita* claimed that the testator's use of the word "persons" was a clear individualization of his beneficiaries.   But we think

this word, in the connection, may as well refer to a class of persons. The phrase, "the following named persons," it is true raises an expectation that the specific names of the beneficiaries are about to be given, but in this case the testator, along with the names of his two living sisters, gives the names of his two deceased sisters and of his deceased brother, whose grandchildren are to receive the legacy. Now did the testator mention the names of the deceased persons only by way of designating the individual grandchildren who were to take, or were the names thus given as the proper heads of the classes who were thus to take? The latter construction is at least as natural and reasonable as the former.

The will is silent as to the names and number of the grandchildren; they are an uncertain body to be first ascertained at the time of the testator's death, and only those then living are included.

Neither do the words, "to be divided equally among them," necessarily import a division of the property among individuals, for they apply just as readily and appropriately to a division among classes.

If now we pass from the particular clause under discussion to other parts of the will, we can find nothing inconsistent with a distribution of the residuum *per stirpes*. If we look at the clause immediately preceding we shall see that when the testator had in mind a *per capita* distribution of certain property in other states among his nephews and nieces, it was very clearly expressed, and in very different language too from that under consideration. The testator might easily in the clause we are considering have given all the residue, (following the style of the clause just referred to), directly to his two sisters and to all his great nephews and great nieces, but for some reason he preferred to name the five persons who stood nearest in kinship—two living and three deceased—the latter leaving grandchildren who were to take the estate. In so doing, we think it probable that the testator had in mind a division of the property into five parts. The will elsewhere discloses the fact that the two living sisters were the especial objects of his bounty, and we think it

improbable that he intended to make their shares as small as any one of his nineteen great nephews and great nieces.

But we are confronted with the English rule of construction, adopted in Massachusetts, New York, and some other states, that "a gift to children, grandchildren, or heirs, is equivalent to naming them and is a gift to them individually." 2 Jarman on Wills, 1st Am. ed., 111. The same author, after citing the above rule, adds, "But this mode of construction will yield to a very faint glimpse of a different intention in the context."

If the above rule is so easily set aside, it would seem equally reasonable that it should also yield to the presumption in favor of the natural heirs or next of kin, for a distribution according to the statute, in all cases where the language of the will is consistent with such a distribution, and the real intention of the testator is in doubt. And such a rule of construction was adopted by this court in *Lyon* v. *Acker*, 33 Conn., 224, and has been recognized in the state of Pennsylvania. In *Minter's Appeal*, 40 Penn. S. R., 111, Lowrie, C. J., justly remarked: "When we find a man distributing his estate, in whole or in part, among his next of kin, and he leaves the proportions in which they are to take doubtful, it is quite natural for us to suppose that he had the statutory or customary form of distribution in his mind and to interpret his will accordingly." And the opinion of the same judge in *Fissel's Appeal*, 27 Penn. S. R., 55, is equally pertinent.

In the case at bar it is conceded that under the statute governing the descent of estates, the grandchildren of the testator's two deceased sisters and deceased brother would take, by right of representation, their deceased parents' share. The English rule, that referring to children is the same as if they were individually named in the will, in view of the exceptions which so easily set it aside, is of little practical importance, and it does not seem to have been recognized in this state, although cases have been discussed and decided where its application would have been controlling. Our decisions quite uniformly have been in favor of a *per stirpes* distribution in all cases analagous to this.

The case of *Lyon* v. *Acker*, supra, would seem t decisive of this. The will contained the clause, "I give my three daughters, Mary, Susan, and Josephine, and t children of my son Samuel, my homestead, to them and thei assigns forever, share and share alike." It was held that the children of Samuel took *per stirpes*, and not *per capita*. The cases are parallel, except as to the degree of kindred and the language employed to denote the portion given to each, and the difference in these respects can make no difference in the principles of construction.

There are several other cases, which, though not as controlling as the above, yet support the views here expressed, and we believe there are no decisions in this state inconsistent with these views. In *Talcott* v. *Talcott*, 39 Conn., 186, the devise was to the children of one Mrs. Burke, deceased, and though the names of each of the children were given, yet it was held that they took as a class, and not *per capita*. In *Bond's Appeal from Probate*, 31 Conn., 183, the devise was, "I give to my children and their heirs respectively, to be divided in equal shares between them." At the date of the will and at his death the testator had four children living, and four others had previously died, all leaving children. No reason appeared for supposing that the testator had any preference for his surviving children over these grandchildren, and it was held that the estate in question was to be distributed in equal shares among the surviving children and the representatives of the deceased ones. In *Cook* v. *Catlin*, 25 Conn., 387, a testator having only nephews and nieces made a bequest "to my heirs." The counsel who contended for a *per capita* distribution insisted upon the English rule, that the word heirs was *descriptio personarum*, and that the will must be construed as if the testator had named each heir individually; but this rule was rejected by the court on account of the different construction given to our statute of distributions in the early case of *Kennedy* v. *Kennedy*, decided in 1786, and the court held that the nephews and nieces should take *per stirpes*, and not *per capita*. In *Lord* v. *Moore*, 20 Conn., 122, the testator had a wife and four children, to each of

whom by name he first made specific bequests, and then gave the residue of his estate to trustees to "divide the same equally between my said wife and said children and their heirs;" and the court held that these words, in the connection in which they were used, gave to the wife a share equal only to one of the children. In *Gold* v. *Judson*, 21 Conn., 616, the testator used the following language:—" I give to the heirs of my brother *A*, deceased, the heirs of my sister *B*, the heirs of my brother *C*, the heirs of my sister *E*, and the heirs of my sister *F*, the residue of my estate, to be equally divided between said heirs, each individual alluded to having an equal portion of the same." The intention of the testator was considered too plain on this part of the will for any doubt, and ELLSWORTH, J., in giving the opinion, said:—"We need not remark that the devisees are to take *per capita*, this being the *express language of the will*."

For the foregoing reasons we advise that the estate in question be divided into five equal shares, and that the two surviving sisters take one share each, and that the grandchildren of the deceased sisters and brother take *per stirpes*.

In this opinion the other judges concurred.