## MARY E. LOCKWOOD'S APPEAL FROM PROBATE.

Fairfield Co., March T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

A testator whose sole heirs at law were *J* a nephew, and *M* a niece, gave his estate to such children of his nephew as should be living at his decease and to such children of his niece as should be living at his

decease, "to be equally divided between said children, to wit, of said *J* and said *M*, and to belong to them and their heirs forever." Held that the legatees took *per stirpes* and not *per capita*.

The distinction between "children" and "heirs" as used in a will is generally of no importance, and becomes important only in nicely balanced cases. Our courts have adopted no rule on the subject.

The word "between" is more properly applicable to two persons or classes than to more. This is not necessarily controlling in the construction of a will, but is not without weight where other considerations are not decisive.

[Argued March 16th—decided April 13th, 1887.]

APPEAL from an order of a court of probate distributing the estate of Joseph R. Andrews, deceased, taken to the Superior Court in Fairfield County. The distributees were legatees under the will of the deceased, and their rights depended upon the construction of the will. If the legatees took *per stirpes* the appellant was entitled to half the estate; if *per capita* to only one third. The court of probate held that the legatees took *per capita* and ordered a distribution of only one third to the appellant, and she took an appeal from the decree. The Superior Court reserved the question for the advice of this court. The case is sufficiently stated in the opinion.

*J. Hooker* and *H. S. Barbour*, for the appellant, cited, as to the *per stirpes* construction of the language of the will— *Lyon* v. *Acker*, 33 Conn., 222; *Talcott* v. *Talcott*, 39 id., 186; *Raymond* v. *Hillhouse*, 45 id., 467; *Heath* v. *Bancroft*, 49 id., 222; *Balcom* v. *Haynes*, 14 Allen, 204; *Holbrook* v. *Harrington*, 16 Gray, 102; *Bassett* v. *Granger*, 100 Mass., 348; *Haskell* v. *Sargent*, 113 id., 341; *Ferrer* v. *Pyne*, 81 N. York, 281; *Vincent* v. *Newhouse*, 83 id., 505; *Fissel's Appeal*, 27 *Penn. St.*, 55; *Risk's Appeal*, 52 id., 269; *Hoxton* v. *Griffith*, 18 *Gratt.*, 574; *Lachland's Heirs* v. *Downing's Exrs.*, 11 B. Monr., 32; *Alder* v. *Beall*, 11 Gill & Johns., 123; *Gerrish* v. *Hinman*, 8 Oregon, 348. And as to the rule that the court will apply the *per stirpes* rule, as being the rule of our statute of distributions, where the testator's intention is left in doubt—1 Swift Dig., (Rev. ed.,) 121; *Cook* v. *Catlin*, 25 Conn., 387; *Bond's Appeal from Probate*, 31 id., 183;

*Lyon* v. *Acker*, 33 id., 222; *Talcott* v. *Talcott*, 39 id., 186; *Raymond* v. *Hillhouse*, 45 id., 467, 475; *Heath* v. *Bancroft*, 49 id., 222; *Fissel's Appeal*, 27 Penn. St., 55; *Minter's Appeal*, 40 id., 111; *In re Harris's Estate*, 74 id., 452; *Lowe* v. *Carter*, 2 Jones Eq., 379; *Gilliam* v. *Underwood*, 3 id., 100; *Lockhart* v. *Lockhart*, id., 205; *Hamlett* v. *Hamlett*, 12 Leigh, 350.

*J. H. Perry* and *S. Fessenden*, for the appellees.

For the purpose of determining the object of the testator's bounty or quantity of interest given by his will, a court may inquire into every material fact relating to the persons who claim to be interested under the will, and to the circumstances of the testator, and of his family, and affairs. Wigram on Wills, 79, 142, 154, 155, 161, and cases cited; O'Hara on Construction of Wills, 28; *White* v. *White*, 52 Conn., 519. There is no class of cases where precedents have so little weight as in the construction of wills. 1 Red. on Wills, 423; *Lyon* v. *Acker*, 33 Conn., 225. On enquiring into the intent of the testator by the fourth clause of his will we find:—1st. That without that clause James S. Andrews and Mary E. Coley, to whom nothing was given, would have inherited the estate as heirs at law. 2d. That its first effect was to deprive them of any interest in the testator's estate. 3d. The next effect was to limit the devise to such children of James Andrews and Mary Coley as should be living, or being dead should have issue living, at the death of the testator and wife, namely, to such children and the issue of such children. 4th. That the testator is careful to provide that the issue of such deceased child should take *per stirpes.* 5th. That this provision for such grandchildren is in strong contrast with the provision for the immediate devisees, wherein the testator provides that his property shall be "equally divided between said children, to wit, of said James S. and Mary E." 6th. That the testator intended to provide against any intestate estate, and to declare, in any event which was likely to occur, who should take his entire estate.

The true construction of the clause in question, taking

all parts of the will into consideration, together with the surrounding circumstances, leads to the conclusion that the devise is the same in effect as though the testator had named each devisee, and then added any other children of either his said nephew or his said niece as might be thereafter born, to be equally divided between them; and it is clear that such was his intention. Excluding entirely the nephew and niece from any share in his bounty, he mentions them only to identify those for whom he intends it, and starts with the " children," a fresh line of descent for his property, directing that it shall " be equally divided between * * * all such children as said James S. Andrews or said Mary E. Coley now have or may hereafter have." If the intention of the testator is in fact to govern, it seems to us unreasonable to claim that when the chosen objects of his bounty are all equally dear and in equal degrees of relationship to him, he intended that the chance fertility of parents whom he deliberately disinherited should make what he called " equal" mean in fact for one double or more what it meant for another. We consider it of controlling importance that the nephew and niece, as well as their children, were all alive when the will was made; that the nephew and niece were disinherited; that the distribution is made to begin with their children, who were all equally related to and favored by the testator; and that, when the contingency of unequal relationship was presented to his mind, in the event of the death of any of these latter, leaving children, then he, by a later clause, for the first time and specifically, applies the *per stirpes* rule.

It was so evidently the intention of the testator to apply his bounty from the starting-point of his grand-nephews and nieces, and to divide it *per capita* between them, that, unless some inflexible rule of law prevents, we are confident that his wishes will be carried out. As we proceed then to consider the decisions applicable to our case, it should be borne in mind that none of the cases applying the *per stirpes* rule were precisely similar to this, and therefore furnish at the best but arguments which are simply more or less irrele-

vant. We will consider the Connecticut cases first, inasmuch as our own courts have applied the rule most strictly.

One of the earliest cases is *Gold* v. *Judson*, 21 Conn., 616. Here the testator gave the residue of his estate to "the heirs of my brother R., the heirs of my sister M., and the heirs of my brother A., to be equally divided between said heirs, each individual alluded to having an equal portion of the same." It was divided *per capita*. The next case is *Cook* v. *Catlin*, 25 Conn., 387. Here the language was "the remainder I give to my heirs." The property was divided *per stirpes*, as the will specified no rule of division. The next is *Bond's Appeal from Probate*, 31 Conn., 183. Here the language was "to my children and their heirs respectively, to be divided in equal shares between them." The legatees were in unequal degrees of relationship. The property was divided *per stirpes*, it being clear that the testator, by giving shares to the heirs of his deceased children, intended them to take the share which as heirs the law would give them. The next case is *Lyon* v. *Acker*, 33 Conn., 222, in which the salutary rule is stated that precedents are entitled to little weight in the construction of wills where the cases are not precisely alike. Here the language was "to my three daughters and the children of my son Samuel, share and share alike." The property was divided *per stirpes*, the court remarking that it would not be presumed that the testatrix intended to discriminate against her daughters and in favor of her son's children. The next case is *Talcott* v. *Talcott*, 39 Conn., 186. The testator gave property to one daughter and her children, another daughter and her children, and the children of a step daughter, "to be equally divided among the above mentioned heirs." The property was divided *per stirpes*, on the ground that the intention of the testator was not clear, except that it could not be that he wished strangers in blood to take more than his own issue. This case seems to hold that the *per stirpes* rule has nothing to recommend it except as furnishing a convenient door of escape when it is impossible to ascertain the testator's wishes from his words. To this we agree. The next

case is *Raymond* v. *Hillhouse*, 45 Conn., 407. Here the language used is " the residue of my estate to the following named persons, to be divided equally among them, viz : R. and S., the grandchildren of my deceased brother W., and the grandchildren of my deceased sisters D. and M." The court held that the brothers and nieces were named as the heads of classes, and the grandchildren took *per stirpes*, on the ground that such construction is at least as natural and reasonable as the other. It will be observed that the beneficiaries stand in quite unequal degrees of relationship to the testator. The court remarks—" The will elsewhere discloses the fact that the living sisters were the especial objects of his bounty, and we think it improbable that he intended to make their shares as small as that of any one of his nineteen great-nephews and great-nieces." The last case is *Heath* v. *Bancroft*, 49 Conn., 220. In this case the court adopted the *per stirpes* rule, because the language of the will left the matter in utter uncertainty, while there were peculiar facts in that case that do not exist in ours. All these cases show that where the intent of the testator is obscure, if the devisees are descendants or heirs at law of the devisors, the court, unless prevented by the language of the will, inclines to apply the rule prescribed by the statute of distributions; but no case can be found like the one at bar where this rule has been applied.

In other states, in a case like this, no shadow of a doubt would rest upon the validity of the distribution *per capita* made by the probate court in this case. O'Hara on the Construction of Wills, 324 ; 2 Jarman on Wills, (1st Am. ed.,) 111 ; *In re Verplank*, 91 N. York, 439 ; *Collins* v. *Hoxie*, 9 Paige, 81 ; *Farmer* v. *Kimball*, 46 N. Hamp., 439 ; *Weston* v. *Foster*, 7 Met., 297 ; *Hall* v. *Hall*, 140 Mass., 267 ; *Roome* v. *Counter*, 1 Halst., 111 ; *Ward* v. *Stow*, 2 Dev. Eq., 509 ; *Bryant* v. *Scott*, 1 Dev. & Bat., 155 ; *Bender's Appeal*, 3 Grant, 210 ; *McKelvey* v. *McKelvey*, 43 Ohio St., 213 ; *Kelley* v. *Vigas*, 112 Ill., 242. The case of *In re Verplank* above cited is strikingly similar to the one at bar and seems to be decisive of it if its reasoning is to be adopted by this court.

The will in the present case speaks of the " children " of the testator's nephew and niece as the objects of his bounty. A different effect is given to this word from that given to the word " heirs " when used in such a case. The word " heirs " is a word of inheritance and seems to imply a distribution of property *per stirpes*, that being the rule of distribution provided by our statute in the case of heirs. But the word " children " is a word of purchase and the use of it is more indicative of an intention that the property be divided *per capita* where there is nothing decisively indicating a different intention in the will. *Carr* v. *Estill*, 16 B. Monr., 309; *Roome* v. *Counter*, 1 Halst., 111. See also a note to the last case in 10 Am. Decisions, 392.

CARPENTER, J. The testator, after making provision for his wife, disposed of his property as follows:—" After the decease of my said wife, I give, devise and bequeath all my estate, wherein the use is herein above given to my said wife as aforesaid, to the children of my nephew, James S. Andrews, who shall be living at the decease of my said wife if she survive me, and, if she do not survive me, then to such children of said James S. Andrews as shall be living at my own decease, and to the children of my niece, Mary E. Coley, who shall be living at the decease of my said wife, if my said wife shall survive me, and if my said wife do not survive me, then to such children of said Mary E. Coley as shall be living at my own decease, to be equally divided between said children, to wit, of said James S. and Mary E., and to belong to them and their heirs forever; and by the term children I mean and intend all such children as said James S. Andrews or said Mary E. Coley now have or may hereafter have, either during my own life or during the life of my said wife. And I further will and direct that if either of said children of said James S. or of said Mary E. shall die before my own decease, or before the decease of my said wife, and leave lawful issue, that such issue shall stand in place of their deceased parent and take the same share of

my estate which their deceased parent, if living as afore-said, will be entitled to by virtue hereof."

The will was made in 1869. At that time James S. Andrews and Mary E. Coley, the children of a deceased brother, were the next of kin and sole heirs at law of the testator. The testator survived them, so that their children, when the will took effect, were his heirs at law. James S. Andrews left one child, the appellant, who is now living. Mary E. Coley left two children, one of whom died during the lifetime of the testator leaving children, and the other survived him.

The question is whether the legatees take *per stirpes* or *per capita*. We think it is reasonably clear that the testator intended that they should take *per stirpes*.

He manifestly regarded his nephew and niece as original stock, being the parents of his legatees. When he made his will they were his next of kin, and naturally enough he would desire to treat them impartially. The reason for passing by them and bestowing his bounty upon their children does not appear. It is not to be inferred however that it was because of any personal dislike, or of superior affection for the children; other reasons may and probably did exist. While the children were the direct objects of his bounty, yet it may have been for the parents' sake. That is probable from the fact that possible unborn children were placed upon the same footing with those then living. He also provided for the issue of deceased children. That portion of the will operates in behalf of two minor children, one of whom was born about the time the will was made, and the other was born afterwards. It cannot be supposed that that was because of any special affection for them. We may safely assume therefore that a personal regard for the nephew and niece prompted the will. Providing for their children was hardly less gratifying to them than a direct provision for their own benefit; for it is for children that most of us strive and spend our energies. It is neither strange nor unnatural therefore that in the mind of the testator equality should be established between his nephew and niece rather

than among their children; indeed that is what we should expect. Coming then to the terms of the will, we find that they are more in harmony with that idea than with a contrary one. Instead of grouping his grand-nephews and grand-nieces in one class, he divides them into two classes, by describing separately and fully the children of James S. Andrews, and then with equal distinctness and fullness the children of Mary E. Coley, to whom the property is given "to be equally divided between said children, to wit, of said James S. and Mary E."

The word "between" rhetorically considered is more applicable to two classes than to a greater number of individuals. While this is not necessarily controlling, yet it is not without weight in a case where other considerations are equally poised; and will have the greater weight if the circumstances aside from that are such as to induce the belief that the word is used in its accurate sense.

The fact that the testator provided for the issue of deceased legatees is of no special significance. He is there making contingent provision for another generation in order to prevent a lapse. It is not in contrast with the previous provision but rather in harmony with it. Regarding the children of his brother as the starting point of new lines of descent, makes the will symmetrical and prevents any implication of an intention that the legatees should take *per capita*.

The view we have taken of this case is sustained by the following cases. *Gold* v. *Judson*, 21 Conn., 616; *Cook* v. *Catlin*, 25 Conn., 387; *Bond's Appeal from Probate*, 31 Conn., 183; *Lyon* v. *Acker*, 33 Conn., 222; *Talcott* v. *Talcott*, 39 Conn., 186; *Raymond* v. *Hillhouse*, 45 Conn., 467

We are asked to distinguish this case from some of the cases cited on the ground that the word "children" is used instead of the word "heirs"; and some cases are cited from other jurisdictions in support of the claim. There is doubtless a technical difference in the meaning of the two words, and yet in common speech they are often used as synonymous. The rule therefore, if it is a rule, should be cautiously

applied. No such rule as yet seems to have been adopted in this state, and so far as it prevails elsewhere we apprehend that it is applied only in nicely balanced cases. This we do not regard as such a case.

Another distinction is suggested—that in most of the cases cited the testators were providing for heirs at law. How important this distinction may be in other cases we will not attempt to say. It is sufficient for our present purpose to call attention to the fact that at the date from which this will speaks—the death of the testator—these legatees were his heirs at law. Moreover in this case the intention of the testator appears with reasonable certainty from the language used, so that it is unnecessary to resort to any artificial rule of construction in order to ascertain it.

The Superior Court is advised to reverse the decree of the court of probate.

In this opinion the other judges concurred.