THE STAMFORD TRUST COMPANY, TRUSTEE, *vs.*
CHARLES D. LOCKWOOD, ADMINISTRATOR, ET ALS.

Third Judicial District, Bridgeport, October Term, 1922.
WHEELER, C. J., BEACH, CURTIS, BURPEE and WEBB, Js.

The term "issue" or "lawful issue" in a will, unless limited by the context and surrounding circumstances, is to be construed as a word of purchase, thus including descendants in every degree.

Such descendants will take *per stirpes* by right of representation, and not *per capita*, unless the will directs otherwise.

Such rule of construction is fortified by the fact that the testator, in certain provisions of his will, had shown his preference for a *per stirpes* distribution, and that a *per capita* distribution would result in an unequal distribution of his estate among the several branches of his family.

A gift in remainder to the issue of the life tenants, unless the will sufficiently expresses a contrary intent, vests in them as a class upon the testator's death, although their right of possession be postponed until the termination of the life estate.

In the present case, one of the life tenants died shortly after the death of his son. Prior to such deaths the son's daughter, born after the testator's death, had been legally given in adoption to strangers. *Held* that by virtue of her adoption at a time when she had no vested interest in the testator's estate, she had lost the right to participate in the distribution as the representative of her father.

Argued November 1st—decided December 11th, 1922.

SUIT to determine the construction of the will of Andrew J. Bell of Stamford, deceased, brought to and reserved by the Superior Court in Fairfield County, *Wolfe, J.*, upon the facts stated in the complaint and admitted in the answers, for the advice of this court.

On April 21st, 1907, Andrew J. Bell of Stamford died leaving a will executed April 15th, 1901, modified and confirmed by three codicils dated, respectively, March 21st, 1902, August 8th, 1904, and December 5th, 1906. By the original will the testator left his entire

estate to the plaintiff trust company in trust for the following purposes:—

"Said The Stamford Trust Company shall hold, manage, invest and re-invest said property assigned and paid over to it as above provided, in trust for the following uses and purposes, to wit: out of the net income of said estate and fund to pay to my wife, Maria Bell at convenient stated periods, the sum of six hundred (600) dollars, annually, and any excess of income over and above said last named sum, and after the death of my said wife all of said income, to divide and pay over as follows: to my son Harry Bell one fourth thereof, to my daughter Georgianna Hecker one fourth thereof, to my daughter M. Louise Vincent one fourth thereof, to my granddaughters Jessie Borden and Florence Bell, each one eighth part thereof, to all of said persons during the term of their natural lives. Upon the death of either of my said children or grandchildren, to pay over to the lawful issue of such child or grandchild such portion of the principal of said fund, as such child or grandchild shall have had the income from during life as above provided. In case either of my said grandchildren shall die without lawful issue her surviving, the one eighth part held for her benefit as aforesaid shall pass and belong to the survivor of them, to receive the income during her life, and the principal shall be paid to her lawful issue, as above provided. In case both of said grandchildren shall die leaving no lawful issue them surviving, then such share of the principal as would have been paid to their issue, shall be equally divided between and among the lawful issue of said Harry Bell, Georgianna Hecker and M. Louise Vincent, per stirpes."

Other provisions of the will and codicil are not material, except those in paragraph two of the second codicil: " 2. I hereby revoke and annul the provision made

for payment of income in the second article of my said will to my granddaughter Florence Bell, and direct that she shall receive no portion whatever of principal or income of my estate, either directly or by reason of failure of issue on the part of her sister Jessie Borden but shall be and remain with no share or interest whatever in my estate. The portion given to her in my said will shall enure to and be divided among the other legatees in said articles named (except my said wife) thereby increasing pro rata the shares of the said other legatees; that is to say, the share of Harry Bell, Georgianna Hecker, M. Louise Vincent and Jessie Borden shall each be increased by a proportionate part of the total of said income in the ratio of their shares as originally given each of them in said article of my will; and in like manner the principal fund directed to be paid to their respective and several issue shall be increased in like proportion."

On August 1st, 1904, just before the execution of the second codicil, the testator transferred to the plaintiff trust company certain property upon trusts in all respects identical with those expressed in the will as modified and confirmed by the second codicil. The statement of material facts set forth in the complaint and admitted by the several answers of the defendants is as follows:—

" 7. At the time of the execution of said will the following children and grandchildren of the testator interested under said will were living, to wit: Georgianna Hecker, M. Louise Vincent, and Harry Bell, children of said deceased; Jessie Borden, daughter of Edward M. Bell, a deceased child; John Hecker, Frederick C. Hecker, George E. Hecker, Louise B. Falls also known as Louise B. Hecker and Genevieve T. Stout, children of Georgianna Hecker; Russell G. Griswold, Harry E. Griswold, and May L. Wilson, children of said M.

Louise Vincent; Arthur W. Bell, Andrew J. Bell, (thereinafter designated as "Andrew J. Bell, second") and Gertrude Lockwood, children of said Harry Bell; Charles Hecker Stout, child of said Georgianna T. Stout; Genevieve Hecker, daughter of John Hecker; and Gertrude Borden and Doris Borden, children of said Jessie Borden.

" 8. At the death of said testator said Harry Bell, Georgianna Hecker, M. Louise Vincent and Jessie Borden and their descendants named in paragraph 7, hereof, were all living, and are still living except M. Louise Vincent, Andrew J. Bell, Second, and Harry Bell, who have since deceased.

" 9. Since the death of said testator the following descendants have been born, to wit: Gladys Bell, daughter of Andrew J. Bell, Second, Sidney H. Wilson, Muriel L. Wilson and Evelyn M. Wilson, children of said May L. Wilson; Charles Davenport Lockwood, Jr., Walter B. Lockwood and Barbara E. Lockwood, children of Gertrude B. Lockwood; Arthur W. Bell, Jr., Gertrude Bell and Dorothy J. Bell, children of said Arthur W. Bell; and John Martin Stout and Bettina Stout, children of said Genevieve Stout, all of whom are living.

" 10. Maria Bell, widow of said testator, died April 8th, 1914.

" 11. On the 16th day of March, 1916, said Harry Bell resigned as executor, and Charles D. Lockwood, named in said will as executor, but who had theretofore declined to act, on the 25th day of March, 1916, qualified as executor, was approved by the court and has ever since acted as such.

" 12. All the debts of said estate have been paid and the expense of the settlement thereof, and nothing remains to be done other than the administration of said trusts.

"13. On May 23d, 1918, M. Louise Vincent died, and said trustee thereupon paid over to her three children, Russell G. Griswold, Harry E. Griswold and May L. Wilson, in equal shares, such portion of the principal fund as the said M. Louise Vincent had the income from during her life as provided in said trusts, but paid nothing to Sidney H. Wilson, Muriel L. Wilson, and Evelyn M. Wilson, children of said May L. Wilson believing said word 'issue' in said trusts to mean children of the life tenants.

"14. On January 29th, 1920, Andrew J. Bell, Second, son of Harry Bell died intestate, leaving issue, to wit, a child Gladys Phillips and a widow Minnie Adele Bell, and as his heirs at law his parents, Harry Bell and Olive B. Bell; and on the 17th day of February, 1920, Charles D. Lockwood, was duly appointed administrator of his estate, and is now acting as such.

"15. On May 6th, 1913, and before the death of said Andrew J. Bell, Second, the said Andrew J. Bell, Second, and Elsie P. English, formerly Elsie B. Bell, parents of Gladys Bell, entered into an agreement with John B. Phillips and Louise Phillips of the town of Stamford, under the statute, by which said Gladys Bell was given in adoption to said John B. Phillips and which said agreement was approved by the Court of Probate for the District of Stamford on the 13th day of May, 1913, as appears by the files and records of said court, and she now is and since said May 13th, 1913, has been the legally adopted daughter of said John B. Phillips.

"16. On April 13th, 1921, said Harry Bell died leaving as his heirs at law, Gertrude B. Lockwood, and Arthur W. Bell, and leaving also the following grandchildren: Gladys Phillips, minor child of said Andrew J. Bell, Second, deceased; (the adopted daughter of John B. Phillips), Charles Davenport Lockwood, Jr., Walter B.

Lockwood, and Barbara E. Lockwood, minor children of Gertrude B. Lockwood; and Arthur W. Bell, Jr., Gertrude Bell and Dorothy J. Bell, minor children of said Arthur W. Bell, and the plaintiff is now ready, subject to the direction of this court to distribute that portion of the estate of Andrew J. Bell of which the said Harry Bell, during his lifetime, received the income, to the persons entitled to receive the same.

"17. On April 15th, 1921, Arthur W. Bell and Charles D. Lockwood were appointed administrators of the estate of said Harry Bell, and then qualified and have ever since acted as such.

"18. The defendants are all of the descendants of the testator who are or may be interested under said will and trust agreement."

The questions upon which the trustee and the defendants desire the advice of this court are:—

First: Whether or not the term "lawful issue" as used in paragraph 2 of said will, in paragraph 2 of said second codicil, and in said trust agreement, shall be construed to mean children of said life tenants, or issue of every degree.

Second: If said term "lawful issue" be construed to mean descendants or issue of every degree, whether such issue or descendants take *per stirpes* or *per capita*.

Third: If said term "lawful issue" he construed to mean descendants or issue of every degree *per stirpes*, whether or not parents and children of each stirp take *per capita* among themselves.

Fourth: Whether in making distribution among the descendants of Harry Bell, the principle of representation applies, or whether each of the children of a living parent take equally with and in competition with such parent and with the brothers and sisters of such child.

Fifth: Who are entitled to said remainder estate

upon the death of said life tenants or either of them, and in what shares or proportions, and to whom shall the same be conveyed or distributed, and in what proportion.

Sixth: Upon the death of the testator, Andrew J. Bell, did his grandchildren by the said Harry Bell, Georgianna Hecker and M. Louise Vincent, and his great-grandchildren by the said Jessie Borden, take vested estates, subject to being opened to let in afterborn children of the class, under the terms of said will.

Seventh: Upon the death of the testator, Andrew J. Bell, did his grandchildren by the said Harry Bell, Georgianna Hecker and M. Louise Vincent, and his great-grandchildren by the said Jessie Borden take vested estates, subject to being opened to let in afterborn children of the class, under the terms of said trust agreement.

Eighth: If the words "lawful issue" be construed to mean issue or descendants of every degree, did each of such issue or descendants take a vested estate under the terms of said will upon the death of the testator subject to being opened to let in afterborn descendants or issue.

Ninth: If the words "lawful issue" be construed to mean issue or descendants of every degree did each of such issue or descendants take a vested estate under the terms of said trust agreement upon the death of the testator, subject to being opened to let in afterborn descendants or issue.

Tenth: Does Gladys Phillips, born since the death of the testator, Andrew J. Bell, child of said Andrew J. Bell, Second (deceased child of said Harry Bell) who has been adopted by said John Phillips, take as issue of the testator or otherwise under said will and trust agreement.

Eleventh: If it be held that by "lawful issue" the

testator meant issue of every degree, are such issue to be determined under said will as of the date of his death or of the death of the respective life tenants.

Twelfth: If it be held that by "lawful issue" Andrew J. Bell meant issue of every degree are such issue to be determined under said trust agreement as of the date of said agreement or of the death of the respective life tenants.

*Warren F. Cressy*, for the plaintiff.

*Walter N. Maguire*, for the defendants Gertrude Bell Lockwood and Arthur W. Bell.

*John M. Comley*, for the defendant Gladys B. Phillips.

*C. Milton Fessenden*, for the defendants Dorothy Janet Bell *et al.*

*Norris E. Pierson*, for the defendant Charles D. Lockwood, administrator.

*Daniel F. B. Hickey*, for the defendant Minnie Adele Bell.

*John H. Light*, for the defendants Harry E. Griswold *et al.*

BEACH, J. In the recent case of *Middletown Trust Co.* v. *Gaffey*, 96 Conn. 61, 66, 112 Atl. 689, we said: "The term 'issue,' in a will, is to be construed as a word of purchase, unless it appears from the context and surrounding circumstances to have been used as one of limitation. Its primary, and therefore presumptive, meaning, when used as a word of purchase, is heirs of the body, and includes descendants of every degree. But when the intention of the testator, as evinced by the context and surrounding circumstances, indicates that

he used the word 'issue,' not in its larger significance, but in its more restricted sense, it will be construed so as to effectuate the testator's intent and to be synonymous with children or grandchildren." In that case the terms "issue" and "children" were used interchangeably by the testator and were construed as synonymous. In this case we cannot discover from the will or the surrounding circumstances any intent to so limit the term "issue," and it must be held to include descendants of every degree.

The next question is whether the descendants of any deceased child or grandchild take *per stirpes* by right of representation of the deceased ancestor, or *per capita.* On this point the will contains no explicit direction, and in the absence of any direction to the contrary we have uniformly held in analogous cases that the *per stirpes* rule of distribution should be adopted. Thus in *Cook* v. *Catlin,* 25 Conn. 387, the words were: "The remainder of my estate I give to my heirs." The testator's only heirs were children of deceased brothers and sisters. On page 391 we said: "The question is, whether the nephews and nieces take equal shares *per capita,* or whether they take, by right of representation, the share a brother or sister of the deceased, whose children they are, and whom they therefore represent, would take if living." It was held that they took *per stirpes.* In *Bond's Appeal,* 31 Conn. 183, the gift was "to my wife, all my real estate, so long as she shall remain my widow; but on her decease or marriage, the remainder thereof I give . . . to my children and their heirs respectively, to be divided in equal shares between them." A *per capita* distribution among children and their heirs was claimed, but we held that the heirs took *per stirpes,* and that the heirs of a deceased child took only the share of their deceased ancestor. In *Lyon* v. *Acker,* 33 Conn. 222,

the gift was "to my three daughters, Mary, Susan, and Josephine, and the children of my son Samuel, my homestead, to them and their assigns forever, share and share alike." We held that the children of Samuel took *per stirpes*, and not *per capita* in competition with the three daughters. In *Talcott* v. *Talcott*, 39 Conn. 186, the testator left all the income of his real estate to two living daughters by name, "and all the children born of" each of the daughters, and also to "all the children" of a deceased daughter, "to be equally divided among the above mentioned heirs." It was held that the will directed an equal distribution *per stirpes* among three classes. In *Raymond* v. *Hillhouse*, 45 Conn. 467, the bequest was "the residue of my estate I give to the following named persons, to be divided equally among them; my sisters [naming them], the grandchildren of my deceased brother [naming him], and the grandchildren of my deceased sisters [naming them]." It was held that the grandchildren took *per stirpes*. See also *Heath* v. *Bancroft*, 49 Conn. 220; *Lockwood's Appeal*, 55 Conn. 157, 10 Atl. 517, and *Jackson* v. *Alsop*, 67 Conn. 249, 254, 34 Atl. 1106. In *Close* v. *Benham*, 97 Conn. 102, 107, 115 Atl. 626, we said: "In *Heath* v. *Bancroft*, 49 Conn. 220, 223, we expressed the view that, in the absence of words indicating a contrary intent, a will is to be interpreted as intending to distribute an estate *per stirpes*, and in accordance with the statute of distributions. 'A further consideration in favor of the *per stirpes* rule is, that this rule has for two centuries commended itself to the judgment of the community as one of justice, and has been and is the rule applied by the law in case of intestate estates. In these circumstances this rule will be applied in the construction of a will where the language of the will leaves the intent of the testator in serious doubt.' "

It is quite true that in most of the cases cited there was some implication of the intent to make it a *per stirpes* distribution, though no explicit direction to that effect, and that in some of them the unequal consequences of a *per capita* distribution was pointed out as one of the considerations in favor of adopting the *per stirpes* rule. Both of these considerations are found in the present case. In the first place the testator himself adopted the *per stirpes* rule when he treated the two daughters of his deceased son Edward as representing their deceased parent, and directed that they should take each one eighth of the income, in spite of the fact that one of them, Jessie Borden, had two children living at the time when the will was executed, while the other, Florence Bell, was unmarried. And so as to the principal of this one-quarter share, the will provides that in case both of the last-named grandchildren should die without issue, "then such share of the principal as would have been paid to their issue, shall be equally divided between and among the lawful issue of said Harry Bell, Georgianna Hecker and M. Louise Vincent, *per stirpes*." In the absence of any explicit direction to the contrary, it would seem that the same rule of distribution among "lawful issue" was intended to be applied to the other three quarters of the testator's estate.

That a *per capita* distribution among issue of every degree would in this case result in an unequal distribution of the testator's estate among the several branches of his family, is apparent. On the other hand, a distribution *per stirpes* among the issue of whatever degree, the issue of each life tenant taking as a class by right of representation, satisfies not only the language of the will and the indicated intent of the testator, but also the policy of our law.

The nature of these gifts in remainder is not open

to doubt. "We have uniformly held that unless the will sufficiently expresses a contrary intent, a limitation over, after life estate, to the issue of the life tenant, and, failing issue, to the heirs, or heirs at law, or to the children or grandchildren of the testator, or to children of another than the testator, are gifts to a class, and vest in point of right upon the testator's death, although the right of possession is postponed until the termination of the life estate." *Close* v. *Benham,* 97 Conn. 102, 103, 115 Atl. 626, and cases cited.

The defendant Gladys (Bell) Phillips was the daughter of Andrew J. Bell, 2nd, and was born after the testator's death. On May 13th, 1913, while her father was still alive, she was legally adopted by John and Louise Phillips. At that time she had no vested interest in the principal of the testator's estate, and at that time, she, by force of the statute, ceased to be the child of Andrew J. Bell, 2nd, and became the child of her parents by adoption. Her right to participate in a distribution *per stirpes,* as representative of Andrew J. Bell, 2nd, was lost before his death.

The Superior Court is advised to answer the several questions propounded as follows: 1. The term "lawful issue" as used in the will means issue of every degree. 2. The descendants of the several life tenants take *per stirpes.* 3. They take by right of representation and not *per capita.* 4. The principle of representation applies. 5. The issue of whatever degree who would be entitled to take under the statute of distribution. 6 and 7, Yes. 8 and 9, Yes. 10, No. 11 and 12, as of the date of the testator's death, the class opening to take in afterborn issue.

No costs will be taxed in this court.

In this opinion the other judges concurred.