## Storer *v.* Wheatley's Executors.

The bequest of a residue to a daughter, and, at her death within age, to the testator's "nearest relations or connections, according to the laws of the Commonwealth," does not include his widow.

Error to the Common Pleas of Fayette county.

Wheatley, after making certain bequests to his sons, gave the surplus to his daughter; but if she died before twenty-one, " it is my will that what I have here willed to her shall revert to my nearest relations or connections, as directed by the laws of the Commonwealth." The daughter died, and the question on the case stated was, whether the widow of testator (plaintiff) was entitled to a share in the estate remaining in the hands of the executors.

*Veech* and *Dunlop* cited act of 1807, sect. 11, 4 Smith, 402; 3 Bin. 557; 9 Serg. & Rawle, 424; 1 Ash. 336; 14 Ves. 372; 2 Vern. 675; 1 Ves. sen. 84; 3 Ves. 231; 18 Ves. 49; 3 Atk. 758; 1 Roper on Legacies, 104, 105; 1 Bro. Ch. 132, n.; 19 Ves. 403; 18 Ves. 49, 50; 3 Swanst. 312.

*Howell* and *Biddle*, 11 Serg. & Rawle, 104; 8 Serg. & Rawle, 43; Toll. on Executors, 302, 303; 1 P. Wms. 327; Prec. Ch. 402, Ca. 273; 1 Atk. 469, n., 470; 3 Bro. Ch. 66, 70; 2 Yeates, 578, 584; 1 Bro. Ch. 31; Jac. L. D. verb. *Kindred;* 1 Park. & J. 285; 1 Ves. sen. 18, 45; 3 Ves. 232; 14 Ves. 373; 9 Ves. 324; 3 Atk. 758; 7 Watts & Serg. 197; 14 Ves. 372; 18 Ves. 49; 3 Ves. 231; Bouvier's L. D. verb. *Widow;* 20 Pick. 67.

The opinion of the court was delivered by Gibson, C. J.

It is well settled that the words " next of kin" exclude the testator's widow; and that the word " relations" excludes those who are so only by affinity; but the words, in this case, do not belong exactly to either class.   " I bequeath to my daughter, Margaret Louisa," is the language of the testator, " all the balance or residue of my estate, to be paid to her when she arrives at lawful age to receive it; but in case my daughter should not live to the age of twenty-one years, it is my will that what I have willed to her shall *revert* to my nearest *relations* or *connections,* as directed by the laws of this Commonwealth"—in other words, the statute of distribution—and the question is, whether the widow is one of the persons who were intended to take according to

it by force of the bequest. The case which comes nearest to the point is Worseley v. Johnson, in which the bequest was to " relations according to the statute for distribution of intestates' estates where there is no will;" or perhaps Davis v. Bailey, in which it was, " to such of my relations as would have been entitled under the statute of distributions in case I had died intestate:" in each of which, Lord Hardwicke excluded the widow. In the will before us, the testator has superadded the word connections; and on this word, ambiguous as it is, the plaintiffs rest their attempt to distinguish the case from all the others that have been cited, and to apply to it the remark of Lord Eldon, in Garrick v. Lord Camden, that a will may be so worded as to require it to be interpreted as if the testator had said, " to be divided as if I had died intestate." I confess that the bent of my mind, at the opening of the case, was towards that conclusion, especially as the word " revert" might indicate that the residue was to fall into the course of distribution from which it had been diverted to provide for a child. But it is far from clear that the testator would have left the bulk of his estate to be distributed according to the statute, if this child had not been in the way. The word was probably an accidental one; and how far is the argument from it strengthened by the word connections, which is more vague than the word relations, which it is supposed to explain? It is true, that every word, which is susceptible of a distinct meaning, must have effect: but nothing can be more indistinct than the meaning of this word in the relation which it bears to the other words in the context. In popular phrase, a wife's relations are her husband's connections; but connections, unless they are also relations, never take by the statute of distributions. The testator, therefore, could not have used words to let in her relations as a class distinct from his own; and if he intended by it to let in his wife only, why did he use it in the plural number? He intended to designate such of his relations as would have taken had he died intestate; and the word connections, which was thrown in as a synonyme, according to the practice of scriveners, was redundant. But a wife is not related to her husband in any respect. Of his connection with her family she is the link or commune vinculum; but so far is she from being connected with him as a relation, that her civil existence is melted into his, and they together form one person. A wife, therefore, is no more a relation or connection of her husband than the husband is a relation or connection of himself. It was said, arguendo, in Garrick v. Lord Camden, that she owes her provision under the statute of distributions, not to the supposition that she is one of her husband's kindred, but to the respect that was felt for her title to the customary share which she had previ-

ously enjoyed.   I am aware that this is, after all, a question of intention; and that it would be sufficient for the argument, that the husband had viewed her as a connection, of which the popular meaning of the word might be evidence : but I am not aware that any popular meaning has been assigned to it, or that to speak of a husband's connections is to allude to his wife.   However that may be, there is enough in this will to satisfy the mind that she was intended to be excluded. There were two principal objects of the testator's bounty—a wife and a daughter.   The secondary objects of it were a father, a brother, and a nephew, the son of a brother; to each of whom he gave an inconsiderable legacy.   His first duty was to provide for the maintenance of his wife; and it was his first care, for her bequest is the first that occurs.   He gave her, besides all his household and kitchen furniture, eight hundred dollars in money, which he must have thought adequate to her wants, else, having the means in his power, he would have given her more.   Why then should he have intended to do more, on the happening of any contingency, than secure a living to a widow, who is proved by the event to have been young enough to marry again? It is a popular sentiment, that a husband's obligation extends no further; and the living is very frequently limited to the period of widowhood.   Now, though the law presumes that a husband intends to do his duty, it presumes not that he intends to do more; and there is no room here for an implication of intent on the ground of moral obligation.   There was no motive for an increase of the wife's provision, on the death of the daughter; and in the absence of words indicative of it, we are not to presume it.  The loose and indefinite word connections is not sufficiently expressive of it.   It is true, that though Mr. Garrick had amply provided for Mrs. Garrick, that circumstance was not pressed in Garrick v. Lord Camden; but the question was decided on precedent, and the case did not need it.   A similar provision, however, was an element of the decision in Worseley v. Johnson, in which it was said, that nothing could be more improbable than that the widow would be alive, at the determination of the estate-tail, to participate in the distribution; and that the testator could not have meant that her share should go out of his family to her representatives.   Now, though it was less probable that the widow, in the case before us, would survive her daughter, the chances were that she would not; and had she died first, the argument that has been made here would equally serve to give the property to her relations: but it is too much to think the testator intended, in any event, to prefer them to his own.   The case, therefore, is with the defendants, on grounds both of intention and precedent.                                      Judgment affirmed.