MARY MERRIAM & another *vs.* JONATHAN B. SIMONDS & others.

Suffolk.    March 30. — Oct. 20, 1876.    COLT & LORD, JJ., absent.

A testator, by his will, devised the residue of his estate to trustees, in trust to pay the income to his son for life, and, on his death without issue, to be divided among his nephews and nieces, namely, the children of his brothers and sisters A., B., C. and D., during their natural lives, "and after their decease to be equally divided among their children or their legal representatives." No nephews or nieces were born after the testator's death. The son survived A., B., C. and D., and died without issue. Some of the testator's nephews and nieces died before the son. The heirs at law of the testator released all claim, and a petition for partition was submitted to the court upon a case stated, in which it was agreed that the estate should be deemed to be held according to the intention of the testator, without regard to any question of invalidity for remoteness. *Held*, that the estate was to be divided into as many fractional parts as there were nephews and nieces living at the death of the testator; that each of them still living was entitled to a life estate in possession, and the respective legal representatives of those who had since died were entitled to an estate in fee simple in such proportionate share; and that the descendant of a child of B., who died before the date of the will, took no interest under it.

PETITION by Mary Merriam and Julia M. Stetson, for partition of certain lands in Boston. The case was submitted to the Superior Court on an agreed statement of facts, in substance as follows:

By the will of Jonathan Simonds, under which all parties derived their titles, and which was executed on July 29, 1834, and admitted to probate on February 23, 1835, after certain devises to trustees for the benefit of his sons George W. and Albert, during their lives, it was provided in the fifteenth clause as follows: " But in case both my son George W. and Albert should die without issue, my will is that all the residue of my real estate hereinbefore limited, appointed and devised, and all my other estate, real and personal, be divided among my nephews and nieces as follows: to wit, the children of my brother Joshua, my brother William, my sister Martha Merriam and my sister Eliza-

beth Parker, during their natural lives, and after their decease to be equally divided among their children or their legal representatives."

The testator's two sons survived him. Albert died intestate in 1861, and George W. in 1871, neither having had issue. The testator's brothers and sisters named in the will were all living at his death, but all died before George W. None of their children were born after the death of the testator. Twenty-three children of the brothers and sisters named in the will, were living at the testator's death, of whom eleven were living at the death of George W., and two of these died afterwards. Some of the children of the nephews and nieces of the testator, living at the time of the filing of the petition, were in being at the time of his death, and others were born afterwards.

The respective families of the testator's brothers and sisters at his death and at the death of George W. were as follows: Martha Merriam had seven children, of whom five died before George W. without issue and intestate, leaving the petitioners their legal representatives. Joshua Simonds had six children, of whom three died before George W. unmarried and intestate, and a fourth after him, leaving two children, who with the other two children of Joshua, were living at the time of the filing of the petition. Elizabeth Parker had six children, of whom four died before George W., one of them intestate and without issue, the other three intestate leaving issue, who with the other children of Elizabeth Parker were living at the time of the filing of the petition. William Simonds had in all five children of whom one, Humphrey, died in 1833, leaving two children, one of whom died in 1850, unmarried and intestate, and the other, Susan C. Putnam, is one of the respondents. Another died intestate after George W. leaving one child, Eliza J. Thompson, who, with the three other children of William Simonds, was living at the time of the filing of the petition.

After the death of George W. Simonds, his half brother and half sister claimed, by inheritance from him, the property of the testator, or a portion of it; and Jonathan B. Simonds, a nephew of the testator and the surviving trustee under his will, acting for the benefit of all the parties interested under it, in 1874 procured releases from the said claimants of all their right, title

and interest in the testator's property, for the sum of $2400, which he advanced from his own funds. " All parties are willing to regard the said payment, and the circumstances thereof, and the action of said Jonathan B. Simonds therein, as fair and just, and deem that he ought to be reimbursed therefor. The property would be seriously damaged by any attempt at subdivision, and ought to be sold. The purchase by J. B. Simonds was of all rights of the heirs at law of the testator, and is now holden for the benefit of any intended beneficiary of the will, even if too remote at law to take under the will alone. No person but the parties hereto has any title whatever in the property, and in fact the intended beneficiaries of the testator do in this mode own the whole."

*Brigham*, C. J., ordered the lands to be sold ; and held that the petitioners were entitled to two twenty-third parts for life and five twenty-third parts in fee simple, and that Susan C. Putnam had no title to the property. The respondents appealed to this court.

*T. M. Stetson*, for the petitioners.

*C. R. Train & J. O. Teele*, for J. B. Simonds and others.

*R. M. Morse, Jr.*, for Susan C. Putnam.

*J. F. Brown & M. H. Swett*, for Eliza J. Thompson.

DEVENS, J. The fifteenth clause of the testator's will provides that if both of his sons should die without issue, all the estate devised for their benefit should be divided among certain nephews and nieces " during their natural lives, and after their decease to be equally divided among their children or legal representatives." The devise to the nephews and nieces has already been decided to be one which would take effect and not be void for remoteness. *Simonds* v. *Simonds*, 112 Mass. 157. What were the rights of " their children or legal representatives," upon the death of such nephews and nieces, it was not necessary there 'o discuss, nor was it necessary to inquire what was the amount of the fractional shares which the nephews and nieces respectively took in the estate of the testator.

If the devise over to " the children or legal representatives " was void, upon the ground that there might have been an unborn child of an unborn nephew or niece provided for thereby, in violation of the rule against perpetuities, so that the intent of

the testator could not have been carried out consistently with well settled principles, such devise was expressed with sufficient clearness. Those only who could take advantage of this invalidity were the heirs at law of the testator, to whom, after the life estates of the nephews and nieces, the possession of the property, thus attempted to be devised, would descend, and who would in the mean time hold this remainder as undevised estate. When there is a devise over upon the occurrence of some future event, which is to determine the prior estate devised, and such devise cannot take effect, the estate is left in the prior taker as if such devise over had not been made. When the prior estate is however determined by its own limitation, independently of any devise over, and the succeeding devise cannot take effect, the remainder continues in the heir at law as undevised estate. The heirs at law of the testator were his two sons, and upon the death of Albert his right to this remainder, if there were any, descended to his brother George. Upon George's death, the whole right descended to his half brother and half sister. From them Jonathan B. Simonds, who is a party to this proceeding, has received a conveyance of all their rights, for the benefit of those who were the intended beneficiaries under the will. In the case stated, the parties have in effect agreed that the sum paid for that conveyance shall be allowed out of the proceeds of the estate when sold, and that the estate shall be deemed to be held according to the intention of the testator, without regard to any question of invalidity for remoteness. The rights of the parties may therefore be disposed of irrespectively of any question as to the legal validity of the devise over after the life estates of the nephews and nieces.

The nephews and nieces, to whom life estates were devised upon the death without issue of the testator's two sons, were the children of certain brothers and sisters named. Of these nephews and nieces twenty-three were *in esse* at the death of the testator, but, at the time when the event occurred upon which they were entitled to the enjoyment of the estate, only eleven were living. The question is therefore presented whether the estate should be divided according to the number of those who were living at the death of the testator, or at the time of the occurrence of the contingency.

The devise over was to a definite class of persons, who were to take life estates upon the occurrence of a particular event, and the general rule is that those take who constitute the class, not when the event occurs, but when the devise becomes operative by the death of the testator. *Winslow* v. *Goodwin*, 7 Met. 363. *Abbott* v. *Bradstreet*, 3 Allen, 587. *Houghton* v. *Kendall*, 7 Allen, 72. Where a different intent is manifested, it is of course to be regarded. *Dixon* v. *Picket*, 10 Pick. 517. *Olney* v. *Hull*, 21 Pick. 311. *Thomson* v. *Ludington*, 104 Mass. 193. No such intent is here shown, and, as each life estate devised to a nephew or niece was followed by a devise to his or her children, or personal representatives, it is strongly indicated that the testator intended that all embraced in the class at the death of the testator should take. Whether there would be a failure of issue of the two sons was of course a contingency; but it was not a part of any contingency, by which the life tenants were affected, that they should survive the sons when such failure occurred, although they could not enjoy the estates devised to them unless they did. The ownership of a contingent interest may vest so that it will descend to the heir of the person to whom it is given if he should die before the contingency occurs, where it is an interest which survives him. Where it is not of that character, it is alike property, and he may convey it so that his grantee will take that which he himself has, namely, the right to enjoy the estate if the contingency occurs. The right which one may have under an executory devise is transferable, and, where it is not affected by the death of the executory devisee, it is also devisable. *Winslow* v. *Goodwin, ubi supra*. Whether the estates which the nephews and nieces were to take are to be regarded as contingent remainders or executory devises, they are still estates and not mere possibilities.

Nor, even if the devise would have opened so as to let in after-born nephews and nieces, had there been any such, who answered the description given by the will, are the life estates the less on that account to be determined at the death of the testator, even if the subsequent enjoyment was contingent. *Bowers* v. *Porter*, 4 Pick. 198. *Moore* v. *Weaver*, 16 Gray, 305.

There was no after-born nephew or niece, a child of either of the testator's brothers and sisters named, but there had been a

nephew, a son of one of the brothers named, Humphrey Simonds, who had deceased leaving issue before the making of the will. On behalf of his daughter, Mrs. Putnam, it is urged that the estate should be divided into twenty-four shares, and not twenty-three as indicated by the number of such nephews and nieces living at the death of the testator, and that she is now entitled to such share in fee as her father would have been entitled to for life, if he had been living at the death of the testator. Such a construction would regard the intent of the testator as manifested to provide for the descendants of the nephews and nieces as a class, in case his own children died childless, and would treat the life estates as of only secondary importance. But the life estates determine the shares into which the property is to be divided. When the will became operative by the death of the testator, if the contingency had then occurred upon which the life estates were limited, Humphrey Simonds was incapable of taking. The testator, after devising the life estates, and describing those who are to take them, adds, " and after their decease to be equally divided among their children or legal representatives," and the equal division contemplated is a subdivision among the children or legal representatives of each individual life tenant as his estate terminates by his death. The words " after their decease," are to be construed as meaning " upon the death of each life tenant." Had the testator intended to provide as a class for his grand nephews and nieces upon the termination of the life estates, the words " legal representatives " would not have been introduced. As her ancestor could take no share of the estate as life tenant, there is nothing to which Mrs. Putnam can succeed as his child. *Christopherson* v. *Naylor*, 1 Meriv. 320. *Parker* v. *Tootal*, 11 H. L. Cas. 143.

It is also contended by one of the parties that the estate of the testator should be divided into four shares, thus representing each of the testator's brothers and sisters named, and that these shares should then be subdivided according to the number of nephews and nieces in each family, and the shares in which there was a life estate thus determined. This would, however, be erroneous. Although certain brothers and sisters are named, this is not for the purpose of separating the nephews and nieces into distinct classes, but for the purpose of describing them all as a

class, and thus distinguishing them from nephews and nieces, who were children of brothers and sisters not named.

We are therefore of opinion that the estate should be divided into twenty-three shares; that there is no share which Mrs. Putnam can take; and that the petitioners, Mrs. Merriam and Mrs. Stetson, are entitled to life estates in two twenty-third parts, as two of the twenty-three nephews and nieces described by the testator; and, as heirs of five of their brothers and sisters, entitled to take under the will, and deceased since the testator, they are entitled as tenants in common in fee to five twenty-third parts in which such brothers and sisters had estates for life.

*Judgment affirmed.*