## JACOB EYER ET AL. V. JAMES BECK ET AL.

### *Will—Construction.*

1. Under a will directing an *equal* division of the testator's property among his (Christian Beck's) heirs, to wit, "John Beck, the children of Christian Beck, Jr., deceased," and four other children, naming them, the grandchildren will take the share which their deceased father would have taken if living and named as a legatee.

2. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

   *a*—The cardinal principle of interpretation of wills is to carry out the *intention* of the testator, if it is lawful, and if it can be discovered.

   *b*—If the language used has been so fully established by construction as to make a rule of property, courts cannot very well depart from the settled interpretation, although testimony, if introduced, might show the testator did not really so understand it. But this is a rule of law, and not of interpretation, and is enforced only on that account.

   *c*—No doubt a man may do what he will with his own; but when he makes a difference between those presumptively equal in his regard, it ought to be made clear by his language.

Case made from Gratiot.   (Hart, J.)   Argued April 6, 1888.   Decided May 11, 1888.

Appeal from decree of circuit court on appeal from probate decree for distribution of estate.   Reversed, and decree made and certified according to opinion.   The facts are stated in the opinion.

*W. E. & J. H. Winton,* for appellants.

*Joseph C. Devin,* for contestants.

CAMPBELL, J.   The only question before us is whether Christian Beck, deceased, in making his will, gave to each of the three children of his deceased son, Christian Beck, the same interest in his estate given to each of his surviving children.   The court below held that each of those grandchildren stood on the same footing as the actual children of decedent, and took individually, and not by representation from their parent.

There is nothing in the rest of the will throwing any light on the testator's intention, which, it seems to us, must be gathered from the clause in the will directing how the estate should be applied.   This is the second clause, which, after directing a sale of his land in Michigan, proceeded to declare that—

"The proceeds of the same, together with what money may be realized from notes or other obligations, be equally divided, after the payment of preferred debts, among my heirs, to wit: John Beck, the children of Christian Beck, Jr., deceased, Elizabeth Eicher, Gottsieb Beck, Peter Beck, Magdalena Eyer."

This will was made in Ohio, but was republished in Michigan, where testator died.

The arguments on both sides were based on decisions in England and America, some of which were in point on each theory; a part holding that such a legacy went by represen-

tation, and a part that it made a distribution *per capita* among children and the three grandchildren. It appears incidentally that at the time of the distribution in the probate court one of the daughters of testator had died, leaving six children, who were testator's grandchildren, each of whom, under the order of the circuit court, gets only one-sixth of the amount allowed to each of the three grandchildren referred to in the will.

In the conflict of authority which appears we do not feel bound to depart from what we may conclude to be the natural meaning of the will, if we can find any clue to that.

The cardinal principle of interpretation of wills is to carry out the intention of the testator, if it is lawful, and if it can be discovered. If the language used has been so fully established by construction as to make a rule of property, courts cannot very well depart from the settled interpretation, although testimony, if introduced, might show the testator did not really so understand it. But this is a rule of law, and not of interpretation, and is enforced only on that account. It would be an untrue presumption, in point of fact, in most cases, because we all know that the abstruse rules set up by precedents are often not much known to even the legal fraternity who have not had their attention called to them, and the unprofessional world is not familiar with law books.

It is very certain that the precise terms of this will have never been considered by any court in this State, and we are not sure that the decisions anywhere else have left it clear how they would have dealt with this particular instrument. They are very generally based either on an unreasoned acceptance of rulings which they deem analogous, or upon considerations outside of the language itself. And it is worthy of remark that the leading cases which sustain a distribution *per capita* intimate that a very small indication of an intent to the contrary would change the rule.

This will does not name the three grandchildren who are claimed to stand on the footing of children. It gives no reason why they are nearer to the testator in affection than his other grandchildren, and he must have known that his named children might all, or any of them, die during his life-time, leaving descendants. In case there was any real preference for one set over the rest, it would seem that the testator would have expressed it, so as to show that he deliberately preferred them. No doubt a man may do what he will with his own. But where he makes a difference between those presumptively equal in his regard, it seems to us that it ought to be made clear by his language.

But it seems to us also that the will is not ambiguous in its language, and is only made so by importing into it a forced and unnatural doctrine which the testator probably never heard of. The laws of inheritance are generally understood by intelligent people. It is understood that, when there are children and grandchildren to take, the grandchildren by one child take in the aggregate only that child's portion. In our judgment this idea is clearly expressed in the will. The testator directs that the property shall be equally divided among his "heirs." He then goes on to name them, and in doing so gives the name of each child, but not of any grandchild. Those he describes only as "the children of Christian Beck, Jr., deceased." Coming as this does in the description of the heirs, we think it evidently means that those children together represent one heir. That is in harmony with the statute of distributions, and is at least quite as natural a meaning as the other, and is to be preferred for that reason, as conforming to our general policy.

As already suggested, any language which distinctly indicated a preference for the three grandchildren over other grandchildren should have due weight. But there is no such language. In spite of the leaning of some of the outside

decisions to the contrary, we think there is significance in grouping without naming them. But, aside from this, we think that before the statutory policy is rejected some intention to reject it should appear.

We do not think it would be profitable to attempt either to harmonize or to distinguish the cases. They are in conflict, and the conflict is not reconcilable. To our own minds the will is not obscure, and we are not disposed to grope in the fog when we can keep out of it.

We think the children of Christian Beck, Jr., collectively are only entitled to the share which he would have taken had he lived and been named or designated as a legatee.

The decree must be reversed, and a decree made and certified back accordingly. The taxed costs will be charged to the estate.

The other Justices concurred.