## ESTATE OF THOMAS CRANE, DECEASED.
[No. 11,874; decided September 8, 1892.]

Wills—Taking Per Capita or by Representation.—Where a testator bequeathes one-half of the residue of his estate to the ''heirs'' of a deceased sister who left a surviving son and six children of a deceased daughter, these heirs take by right of representation and not per capita; that is, one-fourth of the residue goes to the son and one-twenty-fourth to each of the six children.

Wills—Lapse of Legacy on the Death of Legatee.—Where a testator bequeathes one-half of the residue of his estate to a sister, and she dies before his death leaving a daughter and three sons, and these sons also died before the testator, one of them leaving a widow and two sons and the other a widow, the bequest does not lapse, but goes to the lineal descendants of the sister. However, the widows of the deceased sons, not being lineal descendants, are not entitled to share in the bequest.

Elliott J. Moore and Edward C. Harrison, for Joseph H. Moore and Maurice C. Blake, executors.

Selden S. Wright, for the residuary legatees.

COFFEY, J.   Thomas Crane died in the city and county of San Francisco on the thirteenth day of January, 1892. He was never married.   His nearest relatives at the time of his death were the descendants of two deceased sisters, Mrs. Clarace Partridge and Mrs. Arelisle Seaman.

On the thirtieth day of July, 1885, he made his last will and testament.   It bears that date.   The will was duly admitted to probate in the superior court of the city and county of San Francisco, on the twenty-ninth day of January, 1892.

After making some pecuniary legacies, amounting in the aggregate to about $15,000, he disposes of the residue of his estate as per the following clause, being the fifth clause of the will.

"Fifth.—I give and bequeath all the rest, residue and remainder of my estate, of whatever kind or nature, to my sister, Clarace Partridge, now residing in the city of St. Louis, in the State of Missouri, and to the heirs of my late sister, Arelisle Seaman, lately of Grand Rapids in the State of Michigan, to be divided, the one-half to my said sister, and the one-half to the said heirs; it is intended that all the above special bequests shall be first paid regardless of this residuary clause, and that after such payments that the residue be divided as in this last above named clause provided, regardless of said special bequests."

The construction to be given to this clause will fix the rights of the residuary distributees under the will.   The residuum of the estate is divided into two equal parts.   One of these parts is left to Mrs. Clarace Partridge, a sister, who was living at the date of the will, and who died prior to the testator, and the other part to the heirs of Mrs. Arelisle Seaman, the sister who had died prior to the date of the will.

1. As to that half of the residuum left to Mrs. Clarace Partridge: Mrs. Partridge died before the testator, on the twenty-ninth day of August, 1886, leaving at the time of her death, four children.   Of these children of Mrs. Partridge, there was living at the date of testator's death only one, Mrs.

Clara Goldner. One of the sons of Mrs. Partridge, Henry Cotter, married and left a widow and two sons, to wit, Charles Cotter and Henry S. Cotter, and died before the testator; another son, John Cotter, married and left a widow but no child surviving, and died before the testator, to wit, on the twenty-second day of March, 1890. The other son, Edward, was never married and died before the testator, leaving no children.

Did the death of Mrs. Partridge, occurring, as it did, prior to the death of the testator, cause the provision in her favor to lapse?

This question is answered in the negative by the provisions of the Civil Code of California.

Section 1343, Civil Code: "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute some other in his place, except as provided in section thirteen hundred and ten."

Section 1310, Civil Code: "When any estate is devised to any child, or other relation of the testator, and the devisee dies before the testator, leaving lineal descendants, such descendants take the estate so given by the will in the same manner as the devisee would have done had he survived the testator."

The will of the testator, Thomas Crane, took effect at and from the time of his death.

It is in favor of the lineal descendants left by his deceased sister, Mrs. Clarace Partridge, living at the time of his death, that the law makes provision for and saves the bequests from lapsing. Without these provisions the whole bequest of Mrs. Partridge would have failed. Under these provisions the rights of her lineal descendants alone are protected.

It follows that no person, not a lineal descendant of Mrs. Partridge, can claim any portion of this half of the residuum. This construction excludes the surviving widow of John Cotter, deceased, and upon the single ground that she is not a lineal descendant of Mrs. Clarace Partridge: Estate of Pfuelb, 48 Cal. 643.

It follows, then, that the one-half of the residuum devised to Mrs. Clarace Partridge will go to her daughter, Mrs. Clara

Goldner, and to Charles Cotter and Henry S. Cotter, children of her son Henry Cotter, deceased; and that they take by right of representation; that is, of the property bequeathed to Mrs. Partridge under this clause, Mrs. Goldner will take one-half (individually), and the children of Henry Cotter, deceased, will take in equal shares the other half.

2. As to that half of the residuum devised to the heirs of Mrs. Arelisle Seaman:

Mrs. Seaman died leaving one child, Wm. H. Seaman, and the descendants of one other child, Mrs. Arelisle C. Young.

These children of Mrs. Young are all living, and are Abram V. E. Young, Ellen (Nellie) Young, Thomas C. Young, William H. Young, Charles S. Young, and Arelisle M. Young.

The solution as to the distribution of this portion of the residuum depends upon the question whether the "heirs" of Mrs. Arelisle Seaman take by representation or per capita; that is, whether William H. Seaman takes one-quarter of the residuum and the children of Mrs. Young take the other one-quarter between them, or whether Mr. Seaman and the others (son and grandchildren) take equally, all being "heirs" of Mrs. Arelisle Seaman.

The question is an interesting one, and the numerous adjudications and nice distinctions which have been drawn in the adjudicated cases are many. I have extracted somewhat copiously but by no means exhaustively from many of the most recent decisions, as well as the most modern text-writers, and have appended such extracts, as interesting reading matter, to this opinion.

The scarcity of decisions in our own supreme court is to be regretted, but has resulted perhaps from the very plain provisions of the code of California, hereinafter quoted: Civ. Code, secs. 1334, 1335.

The statute of descent (called "Succession") in our Civil Code will be found also to have an important bearing in the determination. It will be noticed that under our laws of descent the distribution invariably takes place by representation and not per capita in every instance except in the two classes of cases mentioned, with others, in subdivisions 1, 6 and 7, in section 1386—in both of which classes alluded to the parties stand in the same degree of relationship.

Sections of the code bearing on the matter, and as showing to whom the property of a party dying intestate goes, are:

Civil Code of California, section 1386, subdivision 1: "If the decedent leave a surviving husband or wife, and only one child, or the lawful issue of one child, in equal shares to the surviving husband or wife, and child or issue of such child. If the decedent leave a surviving husband or wife, and more than one child living, or one child living, and the lawful issue of one or more deceased children, one-third to the surviving husband or wife, and the remainder in equal shares to his children and to the lawful issue of any deceased child by right of representation; but if there be no child of the decedent living at his death, the remainder goes to all of his lineal descendants; and if all of the descendants are in the same degree of kindred to the decedent they share equally, otherwise they take according to the right of representation. If the decedent leave no surviving husband or wife, but leave issue, the whole estate goes to such issue; and if such issue consists of more than one child living, or one child living, and the lawful issue of one or more deceased children, then the estate goes in equal shares to the children living, or to the child living, and the issue of the deceased child or children by right of representation."

Section 1386, subdivision 7: "If the decedent leave several children, or one child, and the issue of one or more children, and any such surviving child dies under age, and not having been married, all the estate that came to the deceased child by inheritance from such decedent descends in equal shares to the other children of the same parent, and to the issue of any such other children who are dead, by right of representation."

Section 1386, subdivision 8: "If, at the death of such child, who dies under age, not having been married, all the other children of his parents are also dead, and any of them have left issue, the estate that came to such child by inheritance from his parent descends to the issue of all other children of the same parent; and if all the issue are in the same degree of kindred to the child, they share the estate equally, otherwise they take according to the right of representation."

Section 1334, Civil Code: "A testamentary disposition to 'heirs,' 'relations,' 'nearest relations,' 'representatives,' 'legal representatives,' or 'personal representatives,' or 'family,' 'issue,' 'descendants,' 'nearest' or 'next of kin,' of any person, without other words of qualification, and when the terms are used as words of donation, and not of limitation, vests the property in those who would be entitled to succeed to the property of such person, according to the provisions of the title on 'Succession' in this code."

Section 1335, Civil Code: "The terms mentioned in the last section are used as words of donation, and not of limitation, when the property is given to the person so designated directly, and not as a qualification of an estate given to the ancestor of such person."

In the case under consideration Wm. H. Seaman is the only child of Mrs. Seaman, whose "heirs" are to receive this one-half of the residuum. The others are grandchildren and the parties stand of course in different degrees; and as the word "heirs" has received a legislative interpretation and signification under section 1334, Civil Code, above quoted, it follows that the division must be made by representation and not per capita, according to the provisions of the title on "Succession" in this code.

In other words, the devise being to the "heirs" of Mrs. Arelisle Seaman, deceased, they take in the same proportion as if they had inherited the estate from her. If they were all grandchildren they would take equally—per capita; as they are not, they take by representation.

The children of Mrs. Young take through her, and in equal parts among themselves, the one-quarter of the residuum, and Wm. H. Seaman takes the other one-quarter.

The weight of authority is certainly in favor of the same conclusion. (See the numerous cases quoted from and cited to that effect, appended hereto.)

But under section 1334, Civil Code, the matter is put to rest, not only as to this word "heirs," but the same rule is established when any of the other words designated in the statute are used in a will.

If the above views are sound, then, after payment of debts, expenses of administration and the money legacies, the re-

mainder of the estate will be distributed as follows: To Clara Goldner, one-fourth; to Charles Cotter and Henry S. Cotter, one-eighth each; to Wm. H. Seaman, one-fourth; to Abram V. E. Young, Ellen (Nellie) Young, Thomas C. Young, William H. Young, Charles S. Young and Arelisle M. Young, one twenty-fourth each.

## APPENDIX.

In Fraser v. Dillon, 78 Ga. 474, 3 S. E. 695, provisions in the will of a testator were that "I give and bequeath to Rachel Dillon, in addition to what she now had given to her during her natural life, lots . . . . during her natural life; and, after her death, lots . . . . to Sarah Mousseau, and the children of Lenora Pellertier (now deceased), her two children"; and, further: "I also give and bequeath to Sarah Mousseau, and the children of Lenora Pellertier, and James, Benjamin and David, children of Rachel, all the lands," etc. It appeared that Rachel was the wife of testator, and Sarah Mousseau, James, Benjamin, and David and Lenora Pellertier, were his children. Held, that it was intended to distribute the property by giving to the children of Lenora the share which the other children of testator named in the will would take under the devise; that is, they were to take per stirpes and not per capita, of the property designated.

Again, it is laid down as a cardinal rule of construction that, in the absence of anything in the will to the contrary, the presumption is that the ancestor intended that his property should go where the law carries it; which is supposed to be the channel of natural descent. To interrupt or disturb this descent, or direct it in a different course, should require plain words to that effect: See Wright v. Hicks, 12 Ga. 163, 56 Am. Dec. 451. And this rule is laid down in the case of Ferrer v. Pyne, 81 N. Y. 281; Lyons v. Acker, 33 Conn. 222; Brenneman's Appeal, 40 Pa. 115.

Eyer v. Beck, 70 Mich. 179, 38 N. W. 20: Under a clause in a will providing that testator's estate "be equally divided among his heirs, to wit, J. B., the children of C. B., Jr., etc.," naming his other children, the testator's grandchildren take per stirpes the share of their deceased parent, as if he had been also designated as a legatee, and not per capita.

In spite of the learning of some of the outside decisions to the contrary, we think there is significance in grouping without naming them. But, aside from this, we think that before the statutory policy is rejected some intention to reject it should appear.

In re Swineburne et al., 16 R. I. 208, 14 Atl. 850: A will directed: "All the rest of my estate I give and bequeath to R., . . . . the legal heirs of B., and of T., M. S., M. C., E., and C., and S., share and share alike, to them, their heirs and assigns, forever. Should either of my above-named children die, leaving no legal heirs born of their own body, then I give their shares, after their death, to my then living heirs." B. died before the testator's death. Held, that the words "of T." were used, by clerical mistake, instead of "to T.," the subsequent clause clearly importing that T. was not excepted from the provisions of the will.

The intention of the testator to have the two children of his deceased son, B., take per stirpes is manifested by his use of the words "legal heirs of B." in designating them; and this construction, being in harmony with the entire structure of the bequest, should take effect, notwithstanding the use of the expression "share and share alike."

Cummings' Exr. v. Cummings et al., 146 Mass. 501, 16 N. E. 401: A testator directed his executors "to keep safely invested all the rest and residue of my estate, after payment of the several legacies herein bequeathed, and of my just debts and funeral charges, and to pay the income thereof to my dear wife during her life, and at her decease to divide the principal thereof equally between my blood relatives of the degree which the law permits." Held, that the estate of the residuary legatees vested in those who were the testator's heirs at the time of his death, and that the distribution should be made per stirpes and not per capita.

Viewing the whole expression most favorably to those who seek a distribution per capita, it was merely equivalent to "equally among my heirs," and, where that is the language, the division is according to the statute of distribution. "A devise to heirs indicates not only the persons who take, but also the manner and proportion in which they take: Rand v. Sanger, 115 Mass. 124. See, also, Balcom v. Haynes, 14

Allen, 204; Holbrook v. Harrington, 16 Gray, 102; Hall v. Hall, 140 Mass. 267, 2 N. E. 700; Booth v. Vicars, 1 Colly Ch. 6; Fielden v. Ashworth, L. R. 20 Eq. 410; In re Campbell's Trusts, 33 Ch. D. 98.

"There is much in the situation of the testator in reference to the number of his heirs of different classes, and the effect which the opposite construction would have upon the distribution of his estate and in the manifestation of his intention toward different heirs in other parts of his will, to strengthen this view. We are therefore of opinion that the distribution among the legatees under this clause should be made per stirpes and not per capita."

Henry v. Thomas, 118 Ind. 23, 20 N. E. 519: A testatrix, by her will, gave her husband $2,000, and then bequeathed the balance of her estate "to be divided equally among my brothers and my sisters, and the children of deceased brothers and sisters, and the brothers and sisters of Perry J. Brinegar, deceased (husband of testatrix), and the children of deceased brothers and sisters," etc. Held, that the distribution among the children of deceased brothers and sisters mentioned should be made per stirpes and not per capita.

"We think the proper construction to be given to this will, and the manifest intention of the testatrix, was to give to the children of each deceased brother and sister of herself and deceased husband the same share that their parent would have taken if living; the child or children of one deceased brother or sister to take the same share that one living brother or sister should take. In legal phraseology, they take per stirpes and not per capita. We are supported by the weight of authority in this construction. The case of Wood v. Robertson, 113 Ind. 323, 15 N. E. 457, was a devise almost identical with this. In that case the will made a devise as follows: 'I give and devise to my beloved wife the farm on which I now reside, as well as all my other real estate of which I may die legally possessed; also all the personal property of whatever description of which I may die the owner, to have and to hold during her natural life; and at her death it is my will that whatever remains of my estate, whether real or personal property, in the hands of my wife,

shall be equally divided among my children then living and the descendants of such as may be dead, share and share alike—taking into consideration all advancements which may have been made either by myself or my wife.' The court, in construing the will in that case, says: 'We deem it clear that the intention of the testator was to give his children and their descendants or heirs the same estate as the law would give them; that is, that the children living should share alike, and the children or descendants of the dead should take the share that would have fallen to the father or ancestor, had he been living. To put our conclusion in more technical terms, we decide that the beneficiaries of the testator's bounty take per stirpes and not per capita. The case of Houghton v. Kendall, 7 Allen, 72, and authorities there cited, support this construction' '': Cites Raymond v. Hillhouse, 45 Conn. 467, 29 Am. Rep. 688.

Preston v. Brant, 96 Mo. 552, 10 S. W. 78: Testator devised lands to his wife for life, "and after her death unto the heirs of my daughter E., and the heirs of my son H. (*) which said heirs shall take ( *   *  . * ) as purchasers from me, and not by inheritance of or descent from my said wife." Held, that the heirs of E. and H. took per stirpes and not per capita, especially as in other clauses similar devises were made to E. for life, and then to her heirs and to H. for life, and then to his heirs; thereby showing that the testator used the terms "heirs of E." and "heirs of H." respectively as referring to a class.

Woodward v. James, 115 N. Y. 346, 22 N. E. 150: Devise to "legal heirs, after death of testator's wife." By the term "legal heirs" the testator meant to designate those of his collateral kindred to whom the law would have given the property in case of intestacy, and the children of deceased brothers and sisters take per stirpes and not per capita.

"The conclusion to be reached on this will is not altogether clear and obvious, but I am inclined to agree with the general term that the testator meant by the phrase 'legal heirs' those who would take in case of intestacy and in the proportions prescribed by the statute; grounding such conclusion, not merely on the situation, but also upon the language of the will, since, as was said in Ferrer v. Pyne, 81 N. Y. 284, the

rule of per capita division will yield to a very faint glimpse of a different intention. It may be that we should follow the rule prevailing in many other states, that a devise to heirs, which compels a reference to a statute to ascertain who should take, makes the same statute the guide to the manner and proportion also: Richards v. Miller, 62 Ill. 417; Bassett v. Granger, 100 Mass. 348; Baskin's Appeal, 3 Pa. 304, 45 Am. Dec. 641; Bailey v. Bailey, 25 Mich. 185; Cook v. Catlin, 25 Conn. 387. But for the present purposes we hold that the will discloses an intent that the remaindermen should take as in a case of intestacy, and so per stirpes."

Mayer v. Hover, 81 Ga. 308, 7 S. E. 562: A will directed certain property to be divided between the children of H. and M. The latter filed a bill in behalf of himself and children, alleging that they were entitled to a portion of the property; that the executor had refused to turn it over; and prayed partition and a construction of the will. The executor admitted the facts alleged.

"The children of H. and M. take under the will per stirpes and not per capita.

"Nor do we think that this plaintiff is entitled to recover through his deceased sister. In our opinion that item of the will, construed by the court in 1864, did not intend to give this property to the children of Lemuel and Mary per capita, but they took under it per stirpes. Half went to the family of Lemuel and half to Mary. This being true, the present plaintiff has no right, title or interest in half of the property, which was distributed to the child or children of Lemuel, and the court was right in holding that he could not recover."

Appeal of Alston (Pa.), 11 Atl. 366: A clause in testator's will was as follows: "This is my will: that my brother, Robert Kingan, shall have and hold for his own special benefit all my property, real and personal, for and during his life; and at his (my brother Robert's) death the real estate to be divided among my legal heirs, share and share alike." Held, that testator's heirs would take per stirpes and not per capita.

"The foundation of the per stirpes rule of distribution rests in a large measure on the presumption that, when bene-

ficiaries are in equal degrees of relationship to the testator, his affection for each is equal, and therefore he will desire to benefit each equally: Osborn's Appeal, 31 Leg. J. 247. The expression 'share and share alike' is applicable as well to individuals as classes: Id. No case has been found in which, standing alone, it has been construed by the supreme court of this state to limit or modify the operation of the statute of distribution in respect to the proportions the next of kin should take; on the contrary, in Baskin's Appeal, 3 Pa. 304, 45 Am. Dec. 641, and in Wood's Appeal, 18 Pa. 478, distribution per stirpes was made, notwithstanding this and stronger expressions were used.''

Lockwood's Appeal, 55 Conn. 157, 10 Atl. 517: The will provided that the estate should go to such children of the niece and to such children of the nephew as should be living at the testator's death, ''to be equally divided between said children, to wit: of said J. and M., and to belong to them and their heirs forever.'' There was also a provision that, in the event of the death of any of such children, their issue, if any, should stand in their parent's place. At the testator's death both niece and nephew were dead, the niece leaving two children, one of whom had also died, with issue, and the nephew leaving one child. Held, that the surviving children took per stirpes and not per capita.

Campbell Exr. v. Clark, 64 N. H. 328, 10 Atl. 702: ''A devise 'in equal shares to my nieces and nephews and to the nieces and nephews of my former husband' is a gift to such of them as survive the testatrix, and they take per capita.''

Schouler on Wills, page 545, section 538: ''Taking Per Capita or Per Stirpes.—That distinction, so familiar in the distribution of the estates of decedents—namely, between per capita and per stirpes—comes now into view. Where all the persons entitled to share stand in the same degree of kin to the decedent, as, for instance, all grandchildren, and claim directly from him in their own right, and not through some intermediate relation, they take per capita; that is, in equal shares, or share and share alike. But where they are of different degrees of kindred, as in the case of grandchildren and great-grandchildren, the latter representing some deceased grandchild like A, they take per stirpes, or according to the stock they

represent; and hence the great grandchild of A may take his dead parent's share, while other great-grandchildren are excluded because their parent B, C, or D is living. When persons take as individuals, they are said to take per capita; when by right of representation, per stirpes.

"If this distinction is embodied in the laws which distribute an intestate estate, a testator may expressly contemplate it in his will or the law presume it for him in his silence. One may thus exclude the legal inference of representation by naming the grandchild of a deceased child with children, or specified individuals as all to take 'share and share alike,' or by some similar expression; or he may, on the other hand, give representation its natural force silently or by saying that such grandchild shall 'take his parents' share,' 'take by right of representation,' and the like. The statute policy of the jurisdiction must determine how far the rule per stirpes should be carried, when the assent of the testator is to be inferred from the language or the silence of his will.

"In general, legatees will take per capita rather than per stirpes, or vice versa, where it is clearly apparent what the testator intended.

"Section 539.—Personal representatives or the next of kin, under the Statutes of Distributions, take naturally per capita by the policy of the English law. Hence, an express provision that the 'personal representatives' of a child, or children, shall take per stirpes and not per capita has been taken to indicate that the testator used 'personal representatives' in the sense of 'descendants.' Heirs, on the other hand, or bodily heirs, 'heirs and assigns,' and such like expressions, signify prima facie that the gift was to take effect per stirpes.

"But all such construction gives way if another intent be detected; and detached words afford no constant test of what the testator really intended. As where one gives 'equally' or 'share and share alike' to his lawful 'heirs'; though once more 'equally,' or 'share and share alike,' might fitly refer in a given case to a division among a class as per stirpes.

"On the other hand, where the gift is to those who would take in case of intestacy, or to 'next of kin' in classes, leaving it doubtful what should be their due proportions, it is

held in the United States the safer rule to construe 'next of kin' in close conformity with the Statute of Distributions, so as to give representation and the division per stirpes its usual effect under the local policy. These presumptions do not seem to vary in force whether the heirs, next of kin, etc., referred to are those of the testator himself or of some other person living at the date of the will.

"Section 540.—As for a gift to be shared by the children of two or more persons, whether expressed to the children of A and B, etc., or to the children of A and the children of B, the devise or bequest means prima facie that these children shall take per capita and not per stirpes. And thus it is also with a devise or bequest to children and grandchildren or to brothers and sisters and nephews and nieces, as though intended to be equally divided among them, the objects of bounty being specified by name. Indeed, wherever as a class the beneficiaries are individually named, or are designated by their relationship to some ancestor living at the date of a will, whether to the testator or some one else, they share per capita by natural inference, and not per stirpes; and especially if they are all of the same degree. Persons, moreover, who would otherwise have taken per stirpes, as A and the children of B, or the members of a specified class and their children, may, from the collective description under which all are embraced in the will, be presumed to take per capita and equally. But this construction bends readily as in other cases to indications in the will of a contrary purpose, if such be the fairer conclusion from the whole context. And the instances where the presumption has thus given way are very many.

"As in the mode of appropriating income, or a failing share before the capital fund is to be distributed; or by force of such words as 'heirs' or 'respectively.'

"Section 542, page 551.—The word 'heirs' in a bequest of personal property, referring to the heirs of A, means, then, prima facie the persons who would be entitled to that property had A died intestate; and this whether A is the testator himself, or some one else named in the will, and whether the gift is substitutional (as in the bequest to 'A' or his heirs) or original (as to 'the heirs of A'). In other words, 'heirs'

is not 'next of kin,' according to the civil computation, but the statutory next of kin, or distributees, those who, for the purpose of succession, stand in a position analogous to that occupied by heirs, as to real estate, under the law of descent.''

Dole v. Keyes, 143 Mass. 237, 9 N. E. 625: A devise of the income and improvement of real and personal estate ''to my children A and B, and at their decease the said real and personal estate shall revert to their children—and also the above-described estate given to my beloved wife, after her decease, to them and their heirs forever''—gives a vested remainder to the children of A and B per capita, and not per stirpes.

In Merriam v. Simonds, 121 Mass. 198, 203, there was an indication that the remaindermen would have taken in a representative capacity if the gift to the first takers had been absolute; for the remainder was ''to their children or legal representatives,'' and the decision went on the ground that legal representatives were mentioned.

Wells v. Hutton et al., 77 Mich. 129, 43 N. W. 768: Under a will devising decedent's estate to her son, to four children of her deceased daughter, and to one son of another deceased daughter, to be divided as follows: ''One-third to my son . . . . and two-thirds to the said children of my said deceased daughters,'' followed by a clause bequeathing five dollars to another granddaughter, these being the only living children and grandchildren, the last-mentioned granddaughter is entitled to five dollars, the decedent's son to one-third of the estate left, and the remaining two-thirds should be divided among the rest per capita.

''These two legatees' shares disposed of, there is nothing remaining indicating in any way that the testatrix intended the balance of her property to go to the legatees except per capita. The persons are all named to whom she intended the legacies to go, and no circumstance has occurred since she made the will which could have possibly changed the evidences of her intention, or that would suggest any other disposition could have been contemplated by the testatrix.''

Balcom v. Haynes, 96 Mass. (14 Allen), 204: A testator, by one clause of his will, gave a pecuniary legacy ''to the

heirs of my sister F.'' By another clause he gave the residue of his estate ''to my brothers A, B and C, and my sisters D and E, and the heirs of F, to be divided in equal shares 'between them.'' Held, that the heirs of F were entitled collectively to one-sixth of the residue.

Bill in equity by the administrator de bonis non, with the will annexed, of the estate of Asahel Haynes, seeking instructions as to the proper mode of distributing the estate. The only material clauses of the will were the third and sixth, which were as follows:

''Thirdly. I give and bequeath to the heirs of my sister, Lydia Walkup, seven hundred dollars.

''Sixthly. I give and devise to my brothers John W. Haynes, Amos Haynes and Charles Haynes, and my sisters Susan Boyd, wife of Stephen Boyd, Ruth Boyd, wife of Warren Boyd, and the heirs of Lydia Walkup, and their heirs respectively, all the rest and residue of my real and personal estate, . . . . to be divided in equal shares between them.''

There were five heirs of Lydia Walkup, and they each claimed one-tenth of the residue; but the other residuary devisees claimed one-sixth each.

Said Gray, J.: ''It is well established, as a general rule of the construction of wills, that by a gift either to the children of several persons, or to a person described as standing in a certain relation to the testator, and the children of another person standing in the same relation, the objects of the gift take per capita and not per stirpes; and therefore in the latter case each child of the second person takes a share equal to the share of the first person. But this, like some other general rules for the construction of wills, has perhaps been adopted and adhered to by the courts rather from the importance of having some rule of interpreting phrases so frequently used by testators, than from any strong and preponderating reason in its favor. And the authorities fully support the statement of Mr. Jarman that 'this mode of construction will yield to a very faint glimpse of a different intention in the context': 2 Jarman on Wills, 4th Am. ed. 111, 112 and notes, The will of Asahel Haynes, however, does not in the clause in question by which he gives the residue of his estate to three of his brothers, two of his sisters, 'and the heirs of Lydia

Walkup' (who was a deceased sister), use the words 'children' but 'heirs,' and the difference is material. The word 'children' is ordinarily used as a word of description, limited to persons standing in the same relation, and has the same effect as if all their names had been given: 2 Jarman on Wills, 69. But the word heirs, 'in the absence of controlling or explanatory words, includes more remote descendants, and is to be applied per stirpes': Daggett v. Slack, 8 Met. 450; Tillinghast v. Cook, 9 Met. 143.

"The addition of the words 'to be equally divided between them' might indeed have the effect of giving it to them per capita if those words necessarily applied to the heirs inter sese. But such is not this case; for, according to the construction of either of the contending parties, the residue is to be divided in equal shares, and the only question is among whom it is to be divided; and the words 'to be equally divided between them' may be satisfied by being applied to the division between the classes, and not to that between the individuals: Holbrook v. Harrington, 16 Gray, 102. . . . . Risk's Appeal, 52 Pa. 269, 91 Am. Dec. 156.

"We are not left to decide this case upon the words of the sixth clause only; for in the third clause of the will is another gift, 'to the heirs of my sister, Lydia Walkup,' which clearly treats them as a class; and the reasonable construction is to interpret similar words in the same manner in the residuary clause.

"We are therefore of opinion that the children of Lydia Walkup took as a class one-sixth only of the residue of the testator's property."

Estate of Pfuelb, 48 Cal. 643: " 'When an estate shall be devised to any child or other relation of the testator, and the devisee shall die before the testator, leaving lineal descendants, such descendants shall take the estate so given by the will, in the same manner as the devisee would have done if he would have survived the testator': Stats. 1850, p. 179. The question for determination is, whether the stepson was a 'relation' of the testatrix in the sense of this section.

"It will be observed that the provision of the statute is confined to a devise to 'any child or other relation of the testator.' Does the term 'relation,' as here used, include relations by

affinity as well as by blood? In its widest popular sense it might possibly include both; but the courts have been frequently called upon to construe it in the interpretation of wills, and it has been uniformly held to include, in its legal sense, only relations by consanguinity: 2 Kent's Commentaries, 537, note; 2 Jarman on Wills, 45; 2 Redfield on Wills, 425; Storer v. Whitney, 1 Pa. 506.

"In Esty v. Clarke, 101 Mass. 36, 3 Am. Rep. 320, the court was called upon to construe a statute strictly analogous to ours; and it was there held that the wife is not a relation of the husband within the meaning of the statute, and that her son by a former marriage will not, by virtue of the statute, take a bequest to her by her husband. It is unnecessary for us to go so far in this case; but if the son by a former marriage of a deceased husband of the testatrix is a 'relation' within the sense of the statute, then a cousin in the third or fourth, or any remote degree of the husband, would come within the same category. In providing that a devise to a 'relation' of the testator should not lapse by the death of the devisee during the lifetime of the testator, if the devisee left lineal descendants, it was not intended to include persons in nowise related to the testator, except through affinity."

The Word "Relative" or "Relation," as employed in statutes which save in certain cases legacies from lapsing on the death of the legatee, has been construed to include only relatives by blood, and to exclude a stepson and also a wife: Estate of Pfuelb, 48 Cal. 643; Estate of Renton, 10 Wash. 533, 39 Pac. 145.